Commonwealth *v.* Futch, Appellant.

Argued March 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

reargument refused May 22, 1972.

*Sallie Ann Radick,* Assistant Public Defender, with her *John J. Dean,* Assistant Public Defender, and *George H. Ross,* Public Defender, for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, April 20, 1972:

We are asked to consider the effect of a claimed violation of Rule 118[1] of the Pennsylvania Rules of

---

[1] "When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before the proper issuing

Criminal Procedure which prohibits "unnecessary delay" between arrest and the filing of a complaint and "preliminary arraignment" of a defendant. Defendant argues that as a result of the failure to comply with Rule 118, in-court identifications which he contends were based upon a lineup prior to being taken "before the proper issuing authority" were improperly admitted at trial. While agreeing with defendant that in-court identifications based on a lineup held in violation of the "unnecessary delay" provision of Rule 118 become inadmissible at trial, nevertheless we affirm appellant's judgment of sentence. We reach this result because the record establishes that in-court identifications of defendant by several eyewitnesses were not based on the challenged lineup but rather had an independent origin.[2]

On August 22, 1970, at approximately 11:30 p.m., appellant Clifford B. Futch and an accomplice allegedly entered a Pittsburgh bar with the intention of committing a robbery. Their entrance and subsequent two- to five-minute stay in the bar was observed by most of the bar's approximately twelve patrons. During the course of the robbery several shots were fired and a patron of the bar was killed.

Futch was arrested without a warrant at 11:00 p.m., on the evening of August 25, 1970, three days after the robbery-murder. Without the assistance of counsel he was placed in a lineup the following afternoon at 12:15 p.m., some thirteen hours after his arrest. Thereafter at 1:00 p.m., defendant was finally taken before the "issuing authority".

authority where a complaint shall be filed against him. (a) if the complaint charges a court case, the defendant shall be given an immediate preliminary arraignment." Pa. R. Crim. P. 118.

[2] *United States v. Wade*, 388 U.S. 218, 240-42, 87 S. Ct. 1926, 1939-40 (1967) ; *Gilbert v. California*, 388 U.S. 263, 272-73, 87 S. Ct. 1951, 1956-57 (1967).

The Commonwealth first argues that Rule 118 is inapposite to the facts of this case because there was no "unnecessary delay" in presenting defendant before a magistrate. Such an assertion is difficult to square with the facts. Defendant was arrested at 11:00 p.m., and was held in custody some fourteen hours, placed in a lineup, and finally brought before a magistrate. Permissible delay between arrest and arraignment has been defined by Judge, now Chief Justice BURGER, in the following fashion: "Necessary delay can reasonably relate to time to administratively process an accused with booking, fingerprinting and other steps and sometimes even to make same [sic] limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested." *Adams v. United States,* 399 F. 2d 574, 579 (D.C. Cir. 1968) (concurring opinion).

The Commonwealth concedes that it had ample probable cause to arrest defendant, thus there existed no necessity for additional time to ascertain whether the police did indeed have the right man. Nor were the police warranted or even constitutionally able to take additional time to interrogate defendant; the record reveals that defendant specifically refused to give a statement at the time of his arrest and repeatedly thereafter and indeed said that he would not answer any questions without the presence of a lawyer. Compare *Commonwealth v. Koch,* 446 Pa. 469, 288 A. 2d 791 (1972). In view of the uncontested availability of a magistrate during much of this fourteen-hour interim, the record can only support a conclusion that defendant's lengthy custody prior to presentment before a magistrate constituted "unnecessary delay" contrary to Rule 118.

It must now be determined what is the effect of a fourteen-hour "unnecessary delay" between arrest and

arraignment on identification evidence obtained by the police during the "unnecessary delay". Rule 118 of the Pennsylvania Rules of Criminal Procedure parallels Rule 5(a) of the Federal Rules of Criminal Procedure which provides that "[a]n officer making an arrest . . . shall take the arrested person without unnecessary delay before the nearest available commissioner". The United States Supreme Court in the exercise of its supervisory powers[3] has fashioned the so-called *McNabb-Mallory* rule[4] which precludes the use of any evidence obtained during an "unnecessary delay". This is subject to the commonsense caveat that the "unnecessary delay" must have contributed to the securing of the evidence. In *United States v. Mitchell,* 322 U.S. 65, 64 S. Ct. 896 (1944), for example, a confession given within minutes of arrest was held admissible despite a subsequent eight-day delay before presentment to a committing magistrate because the Court found that the delay did not contribute in any way to securing the challenged confession. Compare *Upshaw v. United States,* 335 U.S. 410, 69 S. Ct. 170 (1948).

This Court has similarly been conscious of the possible adverse effects of police conduct which deviates from the unequivocal language of Rule 118. We have held that failure to comply with Rule 118 does not ipso facto render inadmissible evidence obtained by the police during the "unnecessary delay" and that it is incumbent upon defendant to show some prejudice from the delay. *Commonwealth v. Koch,* 446 Pa. 469, 474, 288 A. 2d 791, 793-94 (1972); *Commonwealth ex rel. Butler v. Rundle,* 429 Pa. 141, 155, 239 A. 2d 426, 432-33

---

[3] *Upshaw v. United States,* 335 U.S. 410, 414 n.2, 69 S. Ct. 170, 172 n.2 (1948): *McNabb v. United States,* 318 U.S. 332, 340-42, 63 S. Ct. 608, 613 (1943).

[4] *Mallory v. United States,* 354 U.S. 449, 77 S. Ct. 1356 (1947); *McNabb v. United States,* 318 U.S. 332, 63 S. Ct. 608 (1943).

(1968) ; *Commonwealth ex rel. Staino v. Cavell*, 425 Pa. 365, 376, 228 A. 2d 647, 653 (1967) ; *Commonwealth ex rel. Wilkes v. Maroney*, 423 Pa. 113, 120, 222 A. 2d 856, 860 (1966). While this Court has never articulated precisely what constitutes "prejudice" in the context of "unnecessary delay" proscribed by Rule 118, we think it appropriate to follow the federal approach and exclude all evidence obtained during "unnecessary delay" except that which, as in *Mitchell*, supra, has no reasonable relationship to the delay whatsoever.

The lineup that defendant was subjected to during the "unnecessary delay" is an example of a procedure and problem sought to be avoided by Rule 118's requirement of a prompt preliminary arraignment. Had there not been "unnecessary delay" the defendant would have had a preliminary arraignment pursuant to Rule 119[5] at which an officer of the court would have informed defendant of his right of counsel and delivered a copy of the complaint to him. The considerations which require prompt arraignment after arrest were forcefully stated by Justice FRANKFURTER in *McNabb v. United States*, 318 U.S. 332, 343, 63 S. Ct. 608, 614 (1943) : "Experience has therefore counseled that safeguards must be provided against the dangers of the over-zealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication."

---

[5] "(a) At the preliminary arraignment, the issuing authority shall not question the defendant respecting the offense charged, but shall forthwith deliver a copy of the complaint to him. The issuing authority shall also inform the defendant: "(1) Of his right to secure counsel of his choice and his right to assigned counsel in accordance with Rule 318; . . ." Pa. R. Crim. P. 119.

Defendant denies that he was ever informed of his *Wade*[6] right to counsel at a lineup, a fact disputed by the police and decided against him at the suppression hearing. Had the mandate of Rule 118 been complied with an officer of the court would have informed defendant before the lineup of his right to counsel at the lineup, and thus a constitutionally valid procedure would have been assured. Defendant was instead given a waiver of counsel form which he refused to sign. The text of the waiver form was in itself misleading for it explicitly assured defendant that the lineup would be composed of "a group of other individuals possessing physical characteristics similar to your own"—a guarantee not borne out by the record. In fact, defendant, who had quite distinctive hair, sideburns, goatee and mustache was the only one of seven individuals in the lineup so adorned. These features were mentioned by virtually every witness who identified defendant at the lineup. Had the defendant the assistance of counsel at the lineup, counsel's presence might have precluded the linup's suggestive nature. As the Supreme Court noted in *United States v. Wade,* 388 U.S. 218, 228, 87 S. Ct. 1926, 1933 (1967) : "A major factor contributing to the high incidence of miscarriage of justice from mistaken identification has been the degree of suggestion inherent in the manner in which the prosecution presents the suspect to witnesses for pretrial identification."

We hold that among evidence excluded by "unnecessary delay" in violation of Rule 118 are identifications resulting from uncounseled lineups conducted during the impermissible delay. As Judge, now Chief Justice BURGER, noted in his concurring opinion in *Adams v. United States,* 399 F. 2d 574, 580 (D.C. Cir. 1968) : "Now that the right to counsel is an integral part of

---

[6] *United States v. Wade,* 388 U.S. 218, 87 S. Ct. 1926 (1967).

the lineup procedure, the warnings that are given at presentment and the opportunity to have counsel appointed are highly relevant to the lineup situation. . . . Since the Mallory rule was a response to the protections afforded by prompt presentment, *it is appropriately applied to the lineup situation in the wake of Wade*."[7] (Emphasis added.)

We turn now to the Commonwealth's argument that even if the lineup procedure was invalid, the in-court identifications made by several eyewitnesses to the robbery-murder had a sufficient basis independent of the lineup and thus were properly admitted. We approach this question fully cognizant of the United States Supreme Court's admonition that independent basis must be established by "clear and convincing evidence". *United States v. Wade*, 388 U.S. 218, 240, 87 S. Ct. 1926, 1939 (1967). The Court went on to point out that the proper inquiry is whether the in-court identification came as a result of "exploitation" of the impermissible lineup or by origins "sufficiently distinguishable" from the lineup. 388 U.S. at 241, 87 S. Ct. at 1939. In applying this test the Court enumerated the following essential considerations: "[T]he prior opportunity to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to lineup of another person, the identification by picture of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. It is also relevant to consider these facts which, despite the absence of counsel, are disclosed concerning the conduct of the lineup." 388 U.S. at 241, 87 S. Ct. at 1939-40.

---

[7] Accord *United States v. Broadhead*, 413 F. 2d 1351, 1356-57 (7th Cir. 1969).

Reviewing the record facts in light of the above considerations it appears that the eyewitnesses had ample opportunity to view defendant during the commission of the crime. The bar itself was relatively well-lighted and the defendant was in the bar in clear view of the eyewitnesses for a period of from two to five minutes. Immediately after the incident many of the eyewitnesses gave the police identifications which accurately described defendant. Only one of the seven witnesses attending the lineup failed to identify defendant. The lineup identification itself followed closely on the heels of the alleged crime. Finally, some of the witnesses making in-court identifications of defendant were not even present at the lineup.[8]

In summary, we are persuaded that the Commonwealth has satisfied its burden of showing by "clear and convincing evidence" that the in-court identifications made by six eyewitnesses had a basis independent of the impermissible lineup.

The judgment of sentence is affirmed.

Mr. Chief Justice JONES, Mr. Justice EAGEN and Mr. Justice POMEROY concur in the result.

---

[8] In light of our disposition we need not consider the Commonwealth's final argument that because some of the in-court identifications were made by eyewitnesses who were not at the lineup, the other in-court identifications were harmless error under *Chapman v. California*, 386 U.S. 18, 87 S. Ct. 824 (1967). See *United States v. Wade*, 388 U.S. 218, 242, 87 S. Ct. 1926, 1940 (1967).