**Commonwealth v. Leuzzi**

*Donald G. Joel,* Assistant District Attorney, for Commonwealth.

*Alfred Marroletti,* for defendant.

SAVITT, J., April 18, 1974.—This is a motion to suppress a confession, heard before this court on April 4, 1974.

On January 18, 1974 at approximately 2:05 a.m., Homicide Detectives Hopwood and McCormick went to the residence of defendant, Carmen Leuzzi, and his wife at 1007 Montrose Street. Detective Hopwood advised defendant that he wanted to question him at the Police Administration Building. Defendant and his wife suggested the questioning occur in the home but, in response to a further request, defendant accompanied the detectives to the Police Administration Building. While being transported, defendant was advised he was being questioned concerning the beating of a boy named Robert Mason who had subsequently died.

Defendant arrived at the Police Administration Building at approximately 2:20 a.m. and was placed in a room by himself. At 2:30 a.m. defendant was given full and complete Miranda warnings by Detective Hopwood. At this time, defendant appeared healthy, had no signs of injury, made no complaints, did not appear to be under the influence of drugs or alcohol and seemed alert.

Defendant proceeded to give an oral, exculpatory statement that was completed at 2:50 a.m. Defendant initialed the question concerning his Miranda warnings and signed his name. At 2:50 a.m. Detective Hopwood asked defendant if he would take a polygraph test. Defendant agreed and from 2:50 a.m. to 4:45 a.m. was subjected to the polygraph examination.

From 4:45 a.m. to 6:30 a.m. defendant was returned to Room 118 in the Police Administration Building

where he remained alone while Detective Hopwood went out to ascertain the truthfulness of the statement made earlier by defendant.

At 6:30 a.m. Detective Hopwood in the presence of Detective Bennett obtained an oral incriminating statement from defendant which Detective Hopwood put in writing. Defendant read and signed this statement at the bottom of each page. This procedure lasted until 7:10 a.m. During the time this oral interview was being conducted, defendant was not threatened, coerced, physically abused or promised anything.

At 7:10 a.m. defendant was formally charged with the crime and was arraigned at approximately 10 p.m., 20 hours after being taken into custody.

The only issue argued before this court is whether the incriminating statement given by defendant was obtained as a result of an unnecessary delay between arrest and arraignment in violation of Pennsylvania Rule of Criminal Procedure 130.[1]

Pennsylvania Rule of Criminal Procedure 130 provides that:

"When a defendant has been arrested without a warrant in a court case, he shall be taken without unnecessary delay before the proper issuing authority where a complaint shall be filed against him and he shall be given an immediate preliminary arraignment."

Beginning with Commonwealth v. Futch, 447 Pa. 389, 290 A. 2d 417 (1972), the Pennsylvania courts gave new meaning and interpretation to the term "unnecessary delay" and new consequences resulting from a failure to abide by Rule 130. In Futch, supra, the Supreme Court defined what was permissible delay:

" 'Necessary delay can reasonably relate to time to

---

[1] Formerly Pa. R. Crim. P. 118 and 118(a).

administratively process an accused with booking, fingerprinting and other steps and sometimes even to make some limited preliminary investigation into his connection with the crime for which he was arrested, especially when it is directed to possible exculpation of the one arrested.' "

The court then tackled the problem of what would be the consequence of a violation of Rule 130. The court adopted the McNabb-Mallory Rule, 354 U. S. 449, 77 S. Ct. 1356 (1947), used by the Federal courts. This rule precludes the use of any evidence obtained during an unnecessary delay if that unnecessary delay contributed to the securing of the evidence. The court held that all evidence obtained by an unnecessary delay must be excluded except that which has no reasonable relationship to the delay whatsoever: Commonwealth v. Futch, supra.

In Commonwealth v. Tingle, 451 Pa. 241, 301 A. 2d 701 (1973), the Supreme Court reaffirmed the Futch decision. They viewed Rule 130 together with Rule 140,[2] and a defendant's right to know the charges against him, right to secure counsel, right to have a preliminary hearing and the right to make bail.

In Commonwealth v. Dutton, 453 Pa. 547, 307 A. 2d 238 (1973), the Supreme Court stated the only delays that are necessary are for administrative processing and the unavailability of a magistrate.

In Commonwealth v. Dixon, 454 Pa. 444, 311 A. 2d 613 (1973), the Supreme Court specifically limited the only permissible delay as that which is reasonably required for the administrative processing of the accused citizen. The court held that delay beyond that is unreasonable and constitutes a denial of a citizen's right to know the nature of the charges against him

---

[2] Formerly Rule 119.

18

and to receive an immediate and reasonable opportunity to regain his freedom by the posting of bail.

Recently the Supreme Court decided Commonwealth v. Williams, 455 Pa. 569, 319 A.2d 419 (1974), filed March 25, 1974. In the Williams case, it was held that an unnecessary delay will not be excused where police utilize the delay to corroborate an accused's statement.

The Supreme Court's decisions requiring strict enforcement of Rule 130 have unmistakably added a new dimension to the question of the admissibility of statements made by defendants while in custody. The legal issue presented is not whether the admission was voluntary in the traditional sense but whether the admission was obtained during and as a result of an unnecessary delay between arrest and arraignment. It is an "unnecessary" delay which is the subject of these decisions and not an unreasonable delay. A fair reading of these cases makes it clear that the length of time that elapses between the original arrest and the incriminating statement is not controlling where (1) the delay is unnecessary; (2) evidence that is prejudicial is obtained; and (3) the incriminating evidence is reasonably related to the delay. Thus, the incriminating statement, when it meets the three-part test, is inadmissible even though the elapsed time may be brief.

Conversely, an admissible statement may be obtained during a more substantial delay provided the delay was necessitated by administrative procedures.

The court in Commonwealth v. Williams, supra, leaves no doubt that a prearraignment delay is unnecessary unless required to administratively process an accused. The court stated:

"It must be *emphasized* that pre-arraignment delay will *always* be unnecessary unless justified by admin-

istrative processing—fingerprinting, photographing, and the like." (Italics supplied.)

The court further expressly held that the delay is unnecessary when it is solely to further investigate the case and obtain more incriminating evidence against defendant. An unnecessary delay would exist where the delay was to interview witnesses or a codefendant or to otherwise obtain evidence which either corroborates or discredits a statement already obtained. The intent of these delays can only be to obtain an incriminating admission from defendant.

The facts in this case are similar in substance to the facts in Commonwealth v. Williams, supra. The major difference is that the corroborated statement here is exculpatory while in Williams, although the first statement was exculpatory, the statement the police attempted to corroborate was incriminating. It is not logical or reasonable that an accused arrested who makes an initial exculpatory statement should be further detained while an accused arrested who makes an initial incriminating statement cannot be detained. If a delay to check out an exculpatory statement is considered a necessary delay, it creates an unfair prejudice upon all those who so give an exculpatory statement, for they may be kept in an interrogation room for untold hours while their stories are corroborated. The net effect, therefore, is that the accused professing innocence is not subject to the fullest protections of Rule 130 while the accused who gave the incriminating statement is totally protected.

The Supreme Court in Commonwealth v. Williams, supra, did not distinguish exculpatory and incriminating statements. The court specifically held that the police may not permit any unnecessary delay solely to corroborate an accused's statement. Where corroboration of a statement is the reason for the delay, then

any subsequent statements obtained due to that delay must be suppressed.

It may be true that the strict enforcement of Rule 130 as enunciated by the Supreme Court renders obsolete many customary police practices and may initially result in depriving the Commonwealth of essential evidence in some instances. This does not justify concluding that the cases are distinguishable to avoid what may appear to be an unpleasant or unpopular result.

This court, and surely the Supreme Court, is not unmindful nor unconcerned with the tremendous problems which face the police, particularly in a large urban area. This concern, however, cannot justify permitting an accused to be deprived of the very fundamental right to be arraigned without unreasonable delay after his arrest.

Nothing in Rule 130 prohibits the police from questioning suspects, after proper warnings, during an on-going investigation prior to the suspect's arrest.

A necessary delay in the considered opinion of this court would also include the interrogation of an accused, after the proper warnings are given: (1) promptly after his arrest; (2) promptly after he has voluntarily submitted to a recognized police procedure requiring his physical presence; (3) while actually undergoing administrative processing. However, it is improper to delay an accused's administrative processing toward arraignment for the exclusive purpose of obtaining from him an incriminating statement: Commonwealth v. Tingle, supra. From the strict enforcement of Rule 130, better and more effective police practice can emerge and, at the same time, the rights of those accused will be protected.

In the instant case, after defendant made his exculpatory statement, the delay that followed was for a

polygraph examination and *then to further investigate the circumstances of the crime*. The burden is upon the Commonwealth to show that any delay was administrative. Further investigation of the circumstances of a crime is not an administrative delay: Commonwealth v. Williams, supra. As a result of the delay, created not by any administrative procedures, but in order to corroborate an exculpatory statement, a subsequent incriminating statement was obtained. This incriminating statement clearly was reasonably related to the delay. For the stated reasons, the motion to suppress must be granted.