# JESS LEWIS HAGER *v.* STATE OF MARYLAND

[No. 605, September Term, 1974.]

*Decided July 23, 1975.*

The cause was argued before ORTH, C. J., and MENCHINE and MOORE, JJ.

*Earl E. Manges, Assigned Public Defender*, for appellant.

*Leroy Handwerger, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General* and *Lawrence V. Kelly, State's Attorney for Allegany County,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

Appellant, Jess Lewis Hager, one of three young men involved in the abduction and rape of a 30-year old married woman, received a total sentence of 40 years after his conviction by a jury in the Circuit Court for Allegany County (Getty, J. presiding) of the crimes of kidnapping, rape, perverted sex acts, robbery and larceny of a motor vehicle. Pretrial motions to dismiss the four indictments against him and for suppression of evidence were denied.

On this appeal he alleges error in the denial of these

motions and also contends that the court erred in denying his motion for removal; in denying a trial motion that the indictments be dismissed or that witnesses who allegedly heard, in a related proceeding, certain statements of fact by the State's Attorney be precluded from testifying; and finally in admitting "various exhibits and testimony as to oral statements of the defendant." Upon careful review of the entire record and exhibits, we find the assignments of error unsubstantiated. We shall treat appellant's claims *seriatim*.

I

*Pretrial Motions to Dismiss and to Suppress*

As the trial court found, the motions to dismiss and to suppress raised essentially the same issue, namely, the validity of the arrest of the appellant in the Commonwealth of Pennsylvania. With respect to the motion to dismiss the indictment, we hold that even if the appellant's arrest had been unlawful, this would not be grounds for dismissal of the indictments. *Hammond and Couser v. State,* 7 Md. App. 588, 594 (1969); *Westcott v. State,* 11 Md. App. 305, 308 (1971); *Silbert v. State,* 12 Md. App. 516, 524 (1971).

The trial judge, in a careful memorandum opinion filed at the conclusion of the pretrial hearing on the motion, held that there was a valid warrantless arrest in Pennsylvania. He stated:

"The testimony adduced at the hearing on a Motion to Dismiss establishes clearly that the arrest of the Defendant, Hager, by a Pennsylvania Police Officer, Clish, was a valid warrantless arrest based upon probable cause (*McCray v. Ill.* 386 U. S. 300, *Ker v. California* 374 U. S. 23, *Commonwealth v. Kenney,* Pa., 297 Atl. 2d 794). At the time of arrest the officer knew from the confession of a Co-defendant that a felony had been committed in Maryland and that the Defendant had been implicated as the perpetrator thereof. He further knew the description of the vehicle involved and

had seen the Defendant, Hager, and the Co-defendant who had involved Hager, in the car several days previously. Nothing further is necessary to provide probable cause for the Defendant's arrest without a warrant."

Our examination of the record demonstrates to us that there was abundant support for the above findings. Indeed, the evidence discloses a remarkable performance of co-operative investigatory and detective work by state and local Maryland police officers and police officers in nearby Pennsylvania, acting swiftly and effectively in the apprehension of appellant and his two companions.

The other individuals were Joseph John Albert (a co-defendant, age 19, who was sentenced to 30 years upon his plea of guilty) and Robert Lee Clark (who had not been apprehended at the time of trial in this case but was subsequently tried and convicted on February 21, 1975, and was also sentenced to a 30-year term.) The trio, residents of Washington County, Pennsylvania, came together in the afternoon hours of Monday, March 4, 1974, when they consumed two (2) fifths of vodka and smoked marijuana. They had the use of a 1967 Ford, with Pennsylvania license tag number 7Y-2267, a vehicle which had been borrowed by Albert to provide transportation to and from his employment at a junkyard. Later in the day, the young men started to ride in the direction of Cumberland. Enroute, appellant and Clark decided to steal cars in Maryland. Clark thereafter stole a truck in Frostburg which he later abandoned. He then rejoined the other two and, in a shopping center parking lot outside Cumberland, he stole a Pontiac GTO in which he followed his cohorts into Cumberland proper.

In Cumberland, Albert noticed the victim walking on Green Street. The testimony developed that she was about to mail a letter and intended then to take a walk, an exercise in which she and her husband engaged almost daily. (On this occasion, however, he was not present.)

Joseph Albert motioned appellant Hager to stop the vehicle and appellant did so. Albert alighted, followed the

victim, overcame her struggles and then dragged her into the front seat of the Ford. She was transported to a location in the eastern slope of Big Range Mountain above Frostburg where she was raped by all three. This was preceded by unnatural and perverted acts which appellant required her to perform enroute to the scene. Jewelry was snatched from her neck and a small amount of money removed from her purse. Beaten about the face and head by appellant she sustained a broken jaw and a broken finger when she resisted the efforts of her captors to steal her wedding band and engagement ring.

The abduction had been witnessed by youths riding on motorcycles and by an adult citizen. The Maryland State Police in the Cumberland-Frostburg area and the Cumberland City Police were alerted for the Ford car with Pennsylvania license plates.

The assailants returned the victim to the vicinity of Green Street at approximately 9 p.m. and sped from the scene. Shortly thereafter the state and local police were in hot pursuit of the vehicle and it was abandoned by the fleeing trio in front of the Continental Motel in Cumberland. They took refuge in the dense woods behind the motel and escaped.

## (a) *The Suppression Hearing*

One week prior to appellant's trial, Judge Getty held an evidentiary hearing on the motions to dismiss. Appellant Hager testified in support of the motions and the State offered the testimony of Corporal John F. McGowan, Criminal Investigator for the Maryland State Police from Barrack "C" in LaVale; Frank Douglas Clish, Chief of Police of the Central Borough Police Department in Washington County, Pennsylvania, and William F. Baker, County Investigator, Office of State's Attorney for Allegany County. The testimony developed the facts that the Maryland police ascertained the identity of the owner of the Ford by inquiry to the police department in Washington County, Pennsylvania and this information led them to the home of Joseph Albert. On March 5, the day after the crime, Corporal

McGowan went to the California Police Department in Washington County, Pennsylvania, in the company of William Baker and Lieutenant Morrisey, a Cumberland detective. This occurred at approximately 2:15 p.m. Informed by the desk operator that Chief Clish already had Joseph Albert in custody, the Maryland officers interrogated Albert from 4:25 to 5:00 p.m.

They obtained from Albert a written statement in which he implicated Hager and Clark, describing their roles in the crimes committed. After advising Chief Clish of the confession and the implication of Hager and Clark, Corporal McGowan testified that ". . . Chief Clish informed me that he was very familiar with both men, that he would leave and try to see if he could locate them for us"; and that prior to his departure, Corporal McGowan and Mr. Baker related to him the details of the kidnapping and rape of the previous evening, Mr. Baker having interviewed the victim in the early morning of March 5, 1975 at Memorial Hospital in Cumberland where she was hospitalized.

At approximately 8 p.m. Corporal McGowan received a radio message from Chief Clish that appellant Hager was in custody. A half hour later Chief Clish delivered appellant to the California, Pennsylvania Police Department.

During the course of the testimony of Mr. Clish, it was brought out that he had had occasion to arrest appellant Hager previously and had known Albert for $2^{1}/_{2}$ to 3 years. His search for Hager and Clark led him first to Clark's residence and then to the residence of James Tallman. Chief Clish was accompanied by Officer Ronald Shumar of Redstone, Pennsylvania, as well as by Lieutenant Morrisey of Cumberland. He was driving a Pennsylvania police vehicle. Lieutenant Morrisey remained in the car when they arrived at Tallman's. Chief Clish quickly noticed appellant departing the house by a rear window, drew his revolver and ordered him to halt. Appellant complied. Appellant was placed in a police vehicle of Redstone Township, Pennsylvania. The vehicle was operated by Pennsylvania Officer Shumar. Chief Clish operated his own vehicle back to the California Police Department.

Mr. Baker testified that he did not see appellant until approximately 8:50 p.m. when be began to interview him after giving him his rights. He was jailed in California overnight and taken the next afternoon, March 6, to Republic, Pennsylvania, where, between 4 and 4:30 p.m. he was taken before a magistrate.

Appellant's suppression testimony confirmed the fact of his apprehension at the residence of James Tallman. He testified that he had learned earlier, at the home of Robert Clark, that the police had called his (appellant's) mother. It was she who informed appellant that Joseph Albert was in police custody. He testified, however, that after Chief Clish "pulled a gun on me," the *Maryland* police came around and informed him that he was under arrest for a rape in Maryland. He confirmed his interrogation by Mr. Baker and that he had given a brief oral statement but had refused to discuss any participation on his part in the alleged crimes, stating that he was not "going to hang myself."

He also testified that on March 6, between 12 and 1 p.m., while still in jail in California, Pennsylvania, he was "served with a Maryland warrant" and that between 4 and 4:30 p.m. he was taken to a magistrate's office in Republic, Pennsylvania. He also testified that between the time of his arrest and the time he was taken before the magistrate in Republic, the police officers took samples of his hair, including pubic hair, and went to his house and obtained from his wife the underclothing which he wore the night before.

The trial court was not, of course, required to accept Hager's version of the facts surrounding his apprehension at the Tallman residence. The testimony of Chief of Police Clish, a Pennsylvania officer, was believed by the trial judge and was sufficient to establish that the arrest was made by Chief Clish, that it was a warrantless arrest but that it was made with probable cause. The legality of appellant's arrest must be determined by applying the law of the Commonwealth of Pennsylvania. *Berrigan v. State,* 2 Md. App. 666, 668 (1968), citing *Miller v. United States,* 357 U. S. 301 (1958); *United States v. DiRe,* 332 U. S. 581 (1948);

*Stanley v. State,* 230 Md. 188 (1962). Furthermore, as this Court stated in *Edwards v. State,* 7 Md. App. 108 (1969), where we were concerned with a warrantless arrest of a Maryland suspect by Pennsylvania police: "[W]hile the legality of the appellant's arrest must be determined by the law of Pennsylvania, the jurisdiction in which made, *Berrigan v. State,* 2 Md. App. 666, we think that under the law of that State, as in Maryland, a police officer may make an arrest without a warrant where he has reasonable grounds or probable cause to believe at the time of the arrest that a felony has been committed and that the person arrested has committed the offense. *See Commonwealth v. Negri,* 198 A. 2d 595 (Pa.)."

A later Pennsylvania case is confirmatory of the above statement of the law. *Commonwealth v. Kenney,* 297 A. 2d 794, 796 (1972). In language strikingly appropriate to the present case the Court there stated: ". . . the probable cause for the warrantless arrest can be found in the information received by Lieutenant Patterson from Barry Marabel's confession, wherein he implicated appellant as the individual who committed the crime. *The confession of a co-defendant which implicates the suspect will supply the probable cause for a warrantless arrest. Cf. Comm. v. Matthews,* 446 Pa. 65, 285 A. 2d 510 (1971)." (Emphasis added.)

We think it plain that any warrant of arrest issued in Maryland and served upon appellant in Pennsylvania would be ineffective because a Maryland warrant has no validity beyond the boundaries of the State, *Berrigan v. State, supra.* The record does not contain evidence, independent of appellant's testimony, concerning the attempted execution of any such warrant in Pennsylvania. More importantly, however, upon the evidence above outlined, we hold that the trial court correctly ruled that there was a valid warrantless arrest by Chief Clish, based upon probable cause.

(b) *Pennsylvania Criminal Rule of Procedure 118*

Appellant argues at some length that the evidence against

him should have been suppressed because of noncompliance with Pennsylvania Rule 118 relating to "proceedings initiated by arrest without warrant." The rule provides:

"When a defendant has been arrested without a warrant, he shall be taken *without unnecessary delay* before the proper issuing authority where a complaint shall be filed against him." (Emphasis added.)

The Rule thereafter provides that if the complaint charges a "court case" the defendant shall be given an immediate preliminary arraignment but that if the complaint charges a "summary offense" he shall have the option of an immediate trial or the opportunity for release upon security for his appearance at a trial within a time specified.

The evidence at the suppression hearing developed that the Maryland police officers were not aware of the Rule nor were they advised of it by the Pennsylvania officers. Chief of Police Clish of Pennsylvania was, of course, cognizant of it and testified that there was not at that time in Washington County, Pennsylvania, a procedure whereby magistrates were available on a 24-hour basis; and that, after arresting appellant, he telephoned two magistrates in Washington County and one magistrate in Fayette County — the only three available — but could not reach any of them. He was unable to state a reason why appellant was not taken before a magistrate earlier than 4 or 4:30 p.m. on the following day. The inference is plain, however, that he did not attempt to reach a magistrate on the morning of the 6th and the record is silent as to any such efforts being made by the Maryland State Police.

The Supreme Court of Pennsylvania interpreted Rule 118 in *Commonwealth v. Futch*, 290 A. 2d 417 (1972). *See also, Commonwealth v. Hancock*, 317 A. 2d 588 (1974). In the *Futch* case the Court was called upon to determine the effect of a 14-hour "unnecessary delay" between arrest and arraignment on identification evidence obtained by the police during the period of the delay. Observing that Pennsylvania Rule 118 closely parallels Rule 5 (a) of the

Federal Rules of Criminal Procedure ("An officer making an arrest ... shall take the arrested person without unnecessary delay before the nearest available commissioner"), the Court noted that the United States Supreme Court had fashioned the so-called *McNabb-Mallory* exclusionary rule (*Mallory v. United States,* 315 U. S. 449 (1947); *McNabb v. United States,* 318 U. S. 332 (1943)) which precluded the use of any evidence obtained during an "unnecessary delay." The *Futch* Court noted, however, that the exclusionary rule is subject to the *"common sense caveat that the 'unnecessary delay' must have contributed to the securing of the evidence"* (emphasis supplied), citing *United States v. Mitchell,* 322 U. S. 65 (1944). The Court then made the following observation with respect to the possible adverse effect of police conduct which deviates from the language of Rule 118:

> "We have held that failure to comply with Rule 118 does not *ipso facto* render inadmissible evidence obtained by the police during the 'unnecessary delay' and that it is incumbent upon defendant to show some prejudice from the delay. [citing cases] While this Court has never articulated precisely what constitutes 'prejudice' in the context of 'unnecessary delay' proscribed by Rule 118, *we think it appropriate to follow the federal approach and exclude all evidence obtained during 'unnecessary delay' except that which, as in Mitchell, supra, has no reasonable relationship to the delay whatsoever."* (Emphasis added.)

The ultimate result in *Futch* was a holding that the Commonwealth had satisfied its burden of showing by "clear and convincing evidence" that in-court identifications made by six eyewitnesses had a basis independent of a lineup rendered impermissible because it was held during the period of unnecessary delay.

For similar reasons, relief was denied an appellant who had been held in custody for over 19 hours before being taken to the "proper issuing authority" in *Commonwealth v.*

*Hancock,* 317 A. 2d 588 (1974), *supra.* There, the Court restated the rule in *Futch,* observing: "We held [there] that the violation of the rule results in all evidence obtained during an 'unnecessary delay' between arrest and arraignment, *except that evidence unrelated to the delay,* being subject to a rule of exclusion." (Emphasis added.) The Court in *Hancock* made it plain, moreover, that the investigatory process need not cease at the time of a warrantless arrest:

> "While we do not require that the investigatory process cease at the time of a warrantless arrest we do require compliance with Rule 118 prior to any investigative procedure conducted for the purpose of gathering further evidence against the accused if that procedure is dependent upon the waiving of a constitutional right."

In the instant case, the trial judge in his memorandum opinion held that Pennsylvania Rule 118 was procedural and not applicable in Maryland but even if it was, the seized evidence would nevertheless be admissible. Under the rationale of the *McNabb-Mallory* Rule and the recent decision of the Supreme Court in *Gerstein v. Pugh,* 95 S. Ct. 854, filed February 18, 1975, holding that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest, we think it more correct that Pennsylvania Rule 118 was indeed applicable.

We agree, however, with the result reached by the trial court, namely, that the evidence sought to be suppressed was admissible even under the provisions of Rule 118.

On the basis of the evidence before us, it appears plain that the delay through the evening of March 5th was not "unnecessary," there being no magistrates available. Thereafter, it would appear that efforts should have been made on the morning of March 6th to bring the appellant before a magistrate and that such action was unnecessarily deferred until late that afternoon. It is important, therefore, to determine whether or not, within the teaching of the

Pennsylvania cases cited, there was any evidence sought to be suppressed which was related to the delay. We think substantially all of the evidence was unrelated. While the specific categories of evidence are not carefully described in appellant's brief, we infer that his objection relates to the following:

### 1. *Hair Samples (head and pubic)*

These samples were taken from the defendant after his arrest by Chief Clish, on the evening of March 5th. They are therefore unrelated to the delay and are otherwise constitutionally permissible. *Schmerber v. California*, 384 U. S. 747 (1966); *Robinson v. State*, 18 Md. App. 678 (1973).

### 2. *Photographs*

Appellant presumably challenges the admissibility of pictures taken of him at the California Police Department following his arrest showing scratches on his arms and legs as a result of his flight into the woods in back of the Continental Motel in Cumberland. The objection is again based solely on the "unreasonable delay" issue under Rule 118 but this claim is unavailing. The pictures were taken on the evening of his arrest on March 5th and are totally unrelated to the delay which occurred on the following day.

### 3. *Vacuumed Residue from '67 Ford*

As previously stated, appellant and the other two escapees abandoned the '67 Ford in front of the Continental Motel some time after 9 p.m. on March 4th. The Crime Investigation Unit of the City of Cumberland vacuumed the vehicle in the early morning of March 5th, many hours before the arrest of appellant in Pennsylvania. There is no issue presented under Pennsylvania Rule 118; and appellant has no other grounds for objection, nor indeed any standing to object, since the car had been abandoned by him and had been impounded by Corporal McGowan on the evening of March 4th. *See, Lopata v. State*, 18 Md. App. 451 (1973).

#### 4. *Appellant's Oral Statement*

The statement to which we have previously adverted, made to Mr. Baker by appellant after he had been arrested by Chief Clish and brought to the California Police Department on the evening of March 5th, was taken within a half hour of his arrival at the California Police Department. Again, no issue under Pennsylvania Rule 118 was presented. Furthermore, it is abundantly clear from the record that the *Miranda* requirements were fully complied with; hence, the statement was clearly admissible.

#### 5. *Appellant's Underpants*

In our judgment, only one category of evidence should have been excluded, namely, appellant's undergarments which were obtained by Corporal McGowan and Mr. Baker at appellant's home where they visited his wife at approximately 1 a.m. on the morning of March 6th. (Rose Marie Lanzetta, a chemist employed by the Maryland State Police, testified that "spermatozoa, positive semen, and human blood were identified on this item.")

Our holding is unrelated to Pennsylvania Rule 118 but is, however, mandated by the fact that the record is devoid of evidence to show consent on the part of appellant's wife and clearly the seizure of appellant's clothing at his home was not pursuant to a warrant and could not be justified as a result of a search incident to a lawful warrantless arrest. *Ker v. California*, 374 U. S. 23 (1963); *United States v. Edwards*, 415 U. S. 800 (1974). In view, however, of the overwhelming evidence against appellant, this error on the part of the trial court is not reversible but is indeed harmless error beyond a reasonable doubt. *Chapman v. California*, 386 U. S. 18 (1967).

### II

#### *Right of Removal*

Appellant argues that because under the Maryland Constitution, Art. IV, § 8, there is an absolute right of re-

moval in "indictments for offenses which are or may be punishable by death" he was entitled to an absolute right of removal because kidnapping and rape (Art. 27, § 337 and § 461) are punishable by death. The court therefore erred, he claims, in denying his suggestion for removal which was timely filed.

The basis for the suggestion was that appellant could not have a fair and impartial trial in Allegany County "due to the widespread publicity and notoriety given to this case in the County, and that it would be impossible to have an impartial and unbiased jury in said County due to the nature of the case."

Appellant overlooks the decision of the Court of Appeals in *Bartholomey v. State*, 267 Md. 175 (1972) which invalidated death sentences under the discretionary statutes that impose them, as unconstitutional, under *Furman v. Georgia*, 408 U. S. 238 (1972). Furthermore, in *Johnson v. State*, 271 Md. 189 (1974) the Court of Appeals flatly held that there is no longer a constitutional and absolute right of removal in cases formerly punishable by death.[1]

In addition, there was no showing in the record below of grounds for removal as a discretionary matter. *See, Gibson, Tate and Austin v. State*, 17 Md. App. 246 (1973). In *Gibson*, Judge Gilbert observed that it is incumbent upon the petitioner for removal to show "the pretrial publicity was of such intensity that it permeated the community to the extent that the appellants were denied their right to a fair and impartial jury trial as mandated by both the Sixth Amendment to the Constitution of the United States and Art. 21, Maryland Declaration of Rights."

In the instant appeal we have merely the bald assertions quoted above in support of the suggestion for removal. We find no error in the refusal of the court to grant a removal.

---

1. Ch. 252 of the Laws of Md., 1975, Art. 27, § 413, effective 7/1/75, provides for the imposition of the death sentence if a person is convicted of first degree murder in 8 enumerated situations.

## III

*Denial of Motion to Dismiss or to Exclude Certain Witnesses*

The record in this case is far from clear concerning the basis for appellant's claim that the trial court improperly denied a motion at the outset of the trial that the case be dismissed or that certain witnesses present in the courtroom during proceedings out of the presence of the jury be excluded from testifying in the case. The motion was made at a bench conference at which the following statement was made by counsel for the appellant:

> "Your Honor, I didn't realize this till we were half way *through the previous arraignment*, but all the witnesses for the State or a good many of them were sitting in the Courtroom all the time when Larry was giving the facts of the case, reading the statement of Albert and so forth. Now if I would have realized it at the beginning I would have said something at that time so that they could have been put out. But we were half way through Larry's statement when I realized that a great majority of the State's witnesses are sitting there listening to the State's version of the case." (Emphasis added.)

The State's Attorney responded by stating that "the statement of facts that he gave was purposely very vague as to details" and he added that "most of the witnesses that are present were only witnesses as to small pieces of this case."

Thereafter counsel for the appellant rejoined, "Well the case hadn't started. *We excluded the jury but forgot about the witnesses.*" In this state of the record we can only surmise that the "previous arraignment" may have related to appellant's co-defendant, Joseph John Albert, and it is highly questionable whether the matter has been preserved for appellate review. Maryland Rule 1085. Furthermore, it does not appear that there was any request, pursuant to Maryland Rule 753, that the witnesses be excluded from the courtroom. Indeed, it appears from the statement of

appellant's trial counsel that both sides "forgot about the witnesses."

At all events, even if there had been an exclusion order, violation thereof is not *per se* reversible error. It must be shown that some prejudice resulted to the defendant as a result of the failure to observe the rule. *In re Fletcher*, 251 Md. 520 (1968); *Williams v. State*, 19 Md. App. 582 (1974). Appellant's claim of error is without foundation.

IV

*Alleged Error in Admitting Certain Exhibits and Testimony*

Appellant's fourth argument is repetitive of contentions of error made in connection with the denial of the motion to dismiss or to suppress. One claim of error not heretofore considered with respect to the denial of the aforesaid motions is an assertion of error in permitting testimony of the victim concerning her viewing of a T.V. show relating to a rape victim and the discussion of it with her friends. As we read the record we perceive that this testimony dealt with the reasons given by the victim for her delay in calling the police, namely, her feelings of embarrassment stemming in part from the T.V. show which she had witnessed and had admittedly discussed. We consider that this testimony was admissible as bearing upon the victim's state of mind and that appellant's claim of prejudice must be rejected.

*Judgments affirmed.*