357 A.2d 150

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Nathaniel ODOM, Appellant.**

Supreme Court of Pennsylvania.

Argued June 26, 1975.

Decided May 12, 1976.

396

Jack M. Myers, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Gold-blatt, Asst. Dist. Atty., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROB-ERTS, POMEROY, NIX and MANDERINO, JJ

## OPINION

MANDERINO, Justice.

Appellant, Nathaniel Odom, was tried and convicted on charges arising out of the robbery and murder of one Martin Dobkin. Pretrial motions to suppress certain statements appellant had given to the police were denied, and appellant was tried before a jury and convicted of murder in the first degree and aggravated robbery. Post-verdict motions were denied, and appellant was sentenced to a term of life imprisonment on the murder charge and a concurrent ten to twenty year term on the robbery conviction. An appeal from the denial of post-verdict motions following the judgment of sentence for murder was taken directly to this Court, and an appeal from the judgment of sentence for robbery was filed in the Superior Court and transferred here.

At trial it was established that Martin Dobkin was killed during the course of a robbery at his small grocery store on January 7, 1972. Prosecution witnesses testified that the crime was committed by appellant and two others. These witnesses also testified that appellant entered the store, pretended to purchase some items, and then shot Martin Dobkin. Police witnesses testified that they recovered the murder weapon from appellant's house based on information given to them by him, and that ballistic tests showed that the fatal shots were fired from this weapon. Additionally, the prosecution introduced a formal statement given to the police by appellant in which appellant admitted his participation in the robbery and murder.

Appellant raises several issues which he claims warrant reversal of the trial court's judgment of sentence and require that a new trial be granted. In light of the disposition that follows only one of these questions need be discussed here.

Prior to trial appellant attempted to suppress the statements given to police alleging that they were the product of an unnecessary delay between arrest and arraignment in violation of Pennsylvania Rule of Criminal Procedure 118 (now Pa.R.Crim.P. 130) and *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972) and its progeny.

A brief chronology of the events leading up to appellant's statement to the police will illustrate the merit of his position here. Acting on information received from one Leroy Barnes, who stated that he was with appellant and one other man when appellant robbed and shot Martin Dobkin, police proceeded to appellant's house on March 2, 1972. Finding that appellant was not at home, police left word that they desired to question him regarding this crime.

At 9:00 p. m., March 2, 1972, having heard that the police were looking for him in connection with the robbery and murder at Dobkin's grocery store, appellant appeared at the police station and was taken into custody and placed in an interrogation room. At that time appellant denied involvement in the robbery-homicide. From sometime shortly after 9:00 p. m. until 11:30 p. m., appellant was given a lie detector test. From 11:30 p. m. until 12:00 midnight he was allowed to use the men's room, to eat, and to drink water. From 12:01 a. m., March 3, 1972, until 12:45 a. m., appellant was again interrogated, however, no new information was gained. From 12:45 a. m. until 1:50 a. m., a second lie detector test was conducted. From 1:50 until 3:30 a. m., a "follow-up interrogation" was held during which a short break from 2:20 to 3:00 a. m. was taken to allow appellant to eat. At 3:30 a. m. appellant was left alone in the interrogation room "while police attempted to resolve the conflicting accusations" between appellant's denial and the account given by his accuser Leroy Barnes. Appellant was not disturbed until 8:50 a. m. at which time he

was allowed to use the bathroom and given a drink of water. From 9:00 a. m. until 10:45 a. m. appellant was again interrogated and this time gave a statement differing in some respects from the first two statements. Again, however, appellant denied any involvement in the robbery-homicide. At 10:45 appellant was again taken to the bathroom, returned to the interrogation room, and then left alone until 11:45 a. m. From 11:45 a. m. until 12:00 noon appellant was interrogated again. From 12:00 until 12:30 p. m. he was fed. Interrogation resumed at 12:20 and continued to 12:45 at which time appellant made his first inculpatory statement. From 1:00 until 1:55 appellant was left alone, and at 1:55 the taking of a formal written statement began. The taking of the written statement concluded at 4:50 p. m., on March 3, 1972.

In *Commonwealth v. Williams*, 455 Pa. 569, 319 A.2d 419 (1974) this Court set forth a three-part test for determining whether an alleged violation of Rule 118 [now 130] would result in the exclusion of evidence. First, the delay must be unnecessary. Second, prejudicial evidence must have been obtained during the unnecessary delay. Third, the prejudicial evidence must be reasonably related to the delay.

■■ There can be no doubt as to the second and third of the *Williams'* criteria. Indeed, the prosecution does not dispute that prejudicial evidence was obtained during the delay, and that this prejudicial evidence was related to the delay. The prosecution argues, however, that the delay was necessary because police activity during this period was aimed at resolving the conflicting stories told by appellant and his accuser. This position is totally without merit. As we have said on previous occasions, the only delay which can be tolerated is that necessary for administrative processing. *Commonwealth v. Tingle*, 451 Pa. 241, 301 A.2d 701 (1973). In *Commonwealth v. Cherry*, 457 Pa. 201, 321 A.2d 611 (1974), we

explicitly rejected the practice of arresting an individual and conducting lengthy interrogation while continuing the investigation. Here appellant was taken into custody and intermittently interrogated for a total of at least seven hours and fifty minutes prior to his first inculpatory statement. The remainder of the sixteen hour time period between the arrest and appellant's first inculpatory statement was, with the exception of brief periods spent eating and using the bathroom, spent in isolation in the interrogation room. Such delay to gather evidence and for the purpose of obtaining incriminating statements is always unnecessary. *Commonwealth v. Showalter,* 458 Pa. 659, 328 A.2d 841 (1974) ; *Commonwealth v. Johnson,* 459 Pa. 171, 327 A.2d 618 (1974); *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974). The fact that appellant initially "cooperated" with the police in the sense that he was willing to give a statement denying involvement in the homicide-robbery does not give grounds to justify the delay here. Only after several lengthy interrogation sessions interspersed with several periods of isolation did appellant change his story from one of noninvolvement in the crime charged to one of complicity. Accordingly, we hold that appellant's confession was obtained in violation of our *Futch* rule, and should have been suppressed prior to trial.

Judgments of sentence reversed and a new trial granted.

JONES, C. J., and EAGEN, O'BRIEN, POMEROY and NIX, JJ., concur in the result.