499 A.2d 331

**COMMONWEALTH of Pennsylvania**

v.

**Anthony HARPER, Appellant.**

Superior Court of Pennsylvania.

Submitted May 21, 1985.

Filed Sept. 18, 1985.

Leslie J. Carson, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before CAVANAUGH, CIRILLO and HESTER, JJ.

HESTER, Judge:

In this appeal from denial of Post Conviction Hearing Act [PCHA] relief, appellant alleges numerous instances of ineffectiveness of his trial counsel and the illegality of his separate sentences for first degree murder and robbery. Finding neither ineffectiveness of counsel nor a double jeopardy violation, we affirm.

The material facts are as follows.

The victim, Matthew Boylan, was robbed and fatally wounded while working in his neighborhood grocery store at approximately 11:35 A.M. on September 13, 1975. Detective Gerrard, the supervising detective, arrived at the victim's store around noon. Throughout the afternoon, he and fellow police officers interviewed individuals who were at or near the scene of the crime. Two eyewitnesses told Gerrard they observed a black male enter the victim's store; that they heard a shot; that they observed the same male exit the store; that he was about five feet eight inches tall,

weighed about 250 pounds, and was wearing a gray sweatshirt; that they observed the same male flee on a red ten-speed bicycle which had curled handle bars, reflectors, and a carrier seat; and, that immediately after the black male fled, they entered the store and found the victim lying on the floor.

Another witness, Ronald Pelligrino, informed Gerrard that he was in the victim's store just prior to the shooting; that, while in the store, he stood next to a black male of approximately the same description supplied by the other two witnesses; that he exited the store and left Boylan alone with the black male; that he went to his home which was located next door to the victim's store; and that moments later he heard the victim had been shot and returned to the store. Armed with the information supplied by the three witnesses, Gerrard and fellow police officers combed the area in an effort to locate anyone who saw or knew the alleged assailant.

As a result of their investigation, the police interviewed Charles Linton, who was employed at a grocery store located approximately one and one half city blocks from the victim's store. Linton informed Gerrard that, prior to the robbery and shooting, he conversed with a black male who met the description supplied by the other three witnesses; that this conversation took place outside Linton's place of employment; that, although he didn't know his name, the black male had been a customer of the grocery store for approximately two years; and, that, after the brief conversation, this same male pedalled a red ten-speed bicycle in the direction of the victim's store. About 5:00 P.M., Linton positively identified appellant from approximately one dozen photographs as the black male he conversed with prior to the crime.

At approximately 6:00 P.M., Gerrard and fellow police officers arrived at appellant's residence. The front door was open and some of the officers entered the home. Immediately upon entering, Gerrard observed a red ten-speed bicycle in the living room. Appellant's older brother

informed Gerrard that appellant was on the second floor. At that time, appellant came down the steps to the living room where he was apprehended. The police arrested appellant and seized the bicycle.

As Gerrard entered the front door of appellant's residence, another officer who was guarding the rear of the residence observed a .32 caliber automatic pistol tumbling from the roof of a shed located next door. The pistol had been tossed from a window at the rear of the second floor of appellant's home. The pistol was confiscated by the police and later examined by the Philadelphia Firearms Identification Unit, which determined that a spent shell recovered from Boylan's store had been fired from this pistol.

After his arrest, appellant was transported to police headquarters where, at approximately 8:10 P.M., he made an inculpatory statement regarding the robbery and fatal shooting.

At trial, appellant relied on an alibi defense, namely, that at the time of the crime, he was at his brother's place of employment, a gasoline station located approximately four blocks from Boylan's store. In support of this defense, he presented the testimony of his brother, his brother's employer, and his father. Appellant also presented character evidence and attacked the voluntariness of his confession through police and medical records which indicated he had been hospitalized from September 15 to September 18, 1975.

Appellant was convicted by a jury and was sentenced to life imprisonment for first degree murder, and to a consecutive sentence for robbery to run concurrently with additional sentences for weapons offenses. Appellant's trial counsel represented appellant on direct appeal, which resulted in affirmance by the Pennsylvania Supreme Court, *Commonwealth v. Harper*, 485 Pa. 572, 403 A.2d 536 (1979).

Represented by new counsel, appellant collaterally attacked the effectiveness of prior counsel before, during and after trial. Following an evidentiary hearing, the PCHA

court denied relief. This appeal followed, where appellant has raised, for the first time, the additional claim that his separate sentences for murder and robbery constituted double jeopardy.

Appellant makes the following arguments. He claims that trial counsel, who also represented appellant in his direct appeal, was ineffective in the following respects: 1) he failed to preserve the issue that evidence obtained pursuant to appellant's illegal warrantless arrest in his home should have been suppressed; 2) he failed to seek suppression of appellant's confession on the ground that it resulted from an unlawful delay between arrest and preliminary arraignment; 3) he failed to request a line-up and failed to move to suppress identification testimony; 4) he brought to the attention of the jury the fact that appellant was in custody during the trial and manacled when brought to and from the courtroom; 5) he failed to offer in-court testimony of two physicians who examined appellant after his interrogation and would have corroborated his averment of physical coercion; 6) he failed to instruct a defense witness to observe a sequestration order resulting in a prejudicial limitation on the testimony of that witness; 7) he failed to object and move for a mistrial when the district attorney implied that the jury could infer guilt from appellant's failure to testify; and 8) he failed to elicit testimony by appellant at his suppression hearing that appellant was under the influence of cocaine at the time he confessed. Appellant also argues that his consecutive sentences imposed for murder and robbery constituted double jeopardy. We will consider each allegation.

■ When reviewing the effectiveness of counsel, we determine first whether the underlying claim has merit. If it does, we then inquire whether counsel's handling of the matter at issue had some reasonable basis designed to effectuate his or her client's interests. Counsel is not ineffective unless there was no reasonable basis for the action, nor is counsel ineffective for not taking baseless or meritless action. Finally, a finding of ineffectiveness re-

quires a showing that the course of action pursued by counsel was prejudicial to the defendant. *Commonwealth v. Clemmons*, 505 Pa. 356, 361–62, 479 A.2d 955, 957–58 (1984); *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984); *Commonwealth v. Anderson*, 501 Pa. 275, 461 A.2d 208 (1983); *Commonwealth v. Garrity*, 331 Pa.Super. 475, 480 A.2d 1133 (1984); *Commonwealth v. Davis*, 331 Pa.Super. 285, 480 A.2d 1035 (1984). In light of this standard, we will examine the alleged ineffectiveness of appellant's trial counsel.

The first alleged dereliction was counsel's failure to seek suppression of evidence produced by appellant's warrantless arrest in his home on September 13, 1975. Appellant relies on the Pennsylvania Supreme Court's prohibition of warrantless arrests in the home, *Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), as well as the United States Supreme Court's similar prohibition in *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Appellant's counsel had sought to suppress appellant's confession and other evidence flowing from his arrest, claiming the arrest was illegal due to lack of probable cause. Appellant acknowledges that his 1975 suppression hearing occurred long before either of the cited decisions, so that counsel could not have cited them as authority for the illegality of his arrest. He argues instead that *Williams, supra,* was decided prior to the date his own direct appeal was finally decided, on July 5, 1979. If, as appellant claims, the *Williams* rule should apply retroactively to all cases on direct appeal on November 18, 1978, then he would be entitled to suppression of his confession.

We reject appellant's claim for two reasons. First, the Pennsylvania Supreme Court has held that the warrant requirement established in *Williams, supra,* was not to be accorded retroactive effect. *Commonwealth v. Miller*, 490 Pa. 457, 472–73, 417 A.2d 128, 137 (1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981); *Common-*

*wealth v. Norris,* 498 Pa. 308, 312 n. 1, 446 A.2d 246, 248 n. 1 (1982). The court stated in *Miller, supra,* that "the *Williams* rule applies only to arrests made subsequent to the date of the decision, November 18, 1978." *Id.* Appellant's 1975 arrest does not qualify. Second, even if we adopted appellant's argument that the *Williams* rule should apply to cases such as his which were still pending on direct appeal when *Williams, supra,* was decided on November 18, 1978, we would nevertheless reject the allegation that trial counsel was ineffective for failing to predict this change in time to raise the issue at appellant's suppression hearing in 1975 or at his trial and post-trial proceedings in 1976. Counsel "will not be deemed ineffective because he fails to predict ... or argue all possible future developments in the law." *Commonwealth v. Smith,* 317 Pa.Super. 118, 124, 463 A.2d 1113, 1116 (1983). We reject appellant's first argument.

The second argument alleging ineffective assistance of counsel is likewise without merit. Relying on *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972), appellant claims that a ten hour unnecessary delay between his arrest and arraignment requires the suppression of the confession he made during the interim. The record discloses, however, that half of the ten hour delay was to permit appellant to obtain medical treatment at a hospital emergency room and was therefore not unnecessary. More important, appellant made his confession less than two hours after arrival at the police station. We hold that the confession within two hours of arriving at the station was not the product of any later delay in arraignment. The *Futch* rule, of course, "is subject to the commonsense [sic] caveat that the 'unnecessary delay' must have contributed to the securing of the evidence." *Futch, supra,* 447 Pa. at 393, 290 A.2d at 419. Counsel was not ineffective for declining to raise this baseless claim.

Appellant next contends that trial counsel was ineffective for failing to insist that two prosecution witnesses participate in a line-up and for failing to move to suppress

their identification testimony. Appellant does not, however, explain why a line-up would have been appropriate nor how the witnesses' identification testimony was tainted. It appears likely, moreover, that a request for a line-up would have bolstered the witnesses' in-court identifications, to appellant's detriment. "Trial counsel cannot be deemed ineffective for failing to request a fruitless procedure." *Commonwealth v. Casner*, 315 Pa.Super. 12, 22, 461 A.2d 324, 329 (1983).

■ Appellant also alleges ineffective assistance of counsel for bringing to the attention of the jury the fact that appellant was in custody during trial and manacled when brought to and from the courtroom. Counsel elicited this information during cross-examination of a Commonwealth witness, the father of two teenage witnesses who had testified earlier. Counsel's cross-examination was an attempt to discredit the young witnesses' in-court identification by revealing that they had observed appellant in handcuffs outside the courtroom while they waited to testify. We believe this was a not unreasonable trial strategy and reject the argument that it was ineffective assistance.

■ Appellant next attacks counsel's failure to offer in-person testimony of two physicians who examined appellant after his interrogation, who allegedly would have corroborated appellant's averment of physical coercion. Examination of the record indicates that the physicians' testimony would have been redundant and of little probative value due to the lengthy interval between appellant's interrogation and the medical examinations. We therefore see no ineffectiveness of counsel in failing to offer this testimony.

■ Appellant's sixth attack on counsel's effectiveness is based on his failure to instruct a defense witness to obey the trial court's sequestration order, resulting in a prejudicial limitation on the testimony of that witness. Assuming that trial counsel had no reasonable basis for his failure to enforce the sequestration order, we reject the claim of ineffective assistance because no prejudice resulted. *Com-*

*monwealth v. Clemmons, supra.* Trial counsel made an offer of proof before calling the witness in question. The material evidence he intended to present was elicited during direct and cross examination.

■ Seventh, appellant alleges ineffectiveness of trial counsel for permitting the prosecutor to imply that the jury could infer guilt from appellant's failure to testify. He argues that counsel should have objected and moved for a mistrial when the prosecutor made the following statements during closing argument. "Beyond that, there were other people at the gas station, none of whom were present. You're entitled to all the evidence. You weren't given it." The context of the quoted statements indicates that the "other people" referred to were additional alibi witnesses not called by appellant; the reference was clearly not to the appellant's failure to testify. Viewed in this light, the comments were proper, and failure to object did not constitute ineffectiveness of trial counsel. *Commonwealth v. Leonard,* 499 Pa. 357, 364–65, 453 A.2d 587, 590 (1982).

■ Appellant's final attack on his counsel's effectiveness is based on counsel's failure to elicit testimony by appellant at the suppression hearing that appellant was under the influence of cocaine when he confessed. At the suppression hearing there was testimony by several witnesses that appellant appeared alert, aware and not under the influence of drugs or alcohol.

Based on the evidence presented at that hearing, the judge found that appellant "was not under the influence of alcohol or narcotics at the time he gave either of the two aforesaid statements to the various members of the Philadelphia Police Department." The only evidence in support of appellant's claim of drug use was his own self-serving testimony at the PCHA evidentiary hearing. The PCHA court, however, found that appellant was not credible, his confession was properly admitted at trial and that he was not denied effective assistance of counsel. Opinion, Blake, J. at 6. Since the PCHA court's findings are amply supported by the record, we will not disturb its decision denying relief.

Finally, appellant argues that the offense of robbery merged with the offense of murder so that separate sentences thereon constituted double jeopardy. He places mistaken reliance upon *Commonwealth v. Tarver*, 493 Pa. 320, 426 A.2d 569 (1981), which held that the underlying felony of robbery was a constituent offense of felony murder under the Penal Code of 1939, requiring vacation of Tarver's separate sentence for robbery. Appellant was convicted, not of felony murder, but first degree murder. Unlike felony murder, which requires the commission of a specifically enumerated underlying felony, first degree murder does not require an additional felony. The robbery committed by appellant was not a constituent offense of the murder as it was in Tarver's case. The malice from the robbery was not imputed to the first degree murder committed by appellant, as it was in Tarver's conviction of felony murder. The holding of *Tarver* thus does not apply to appellant's convictions for first degree murder and robbery under the Crimes Code of 1972. We hold that no double jeopardy violation arose from appellant's consecutive sentences for murder and robbery.

Order denying relief under the PCHA affirmed. Judgment of sentence affirmed.