UNITED STATES of America,

v.

Christine HARRIS.

Christine Harris,

v.

United States of America.

CRIM.A. No. 93–144–2.
CIV.A. No. 97–4534.

United States District Court,
E.D. Pennsylvania.

June 9, 2003.

Brett Digman, New Haven, CT, Anna M. Durbin, Ardmore, PA, for Christine Harris.

Sarah L. Grieb, Assistant United States Attorney, Philadelphia, PA, for U.S.

### MEMORANDUM

DALZELL, District Judge.

For the fourth time in five years, we consider whether the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") bars Christine Harris's pursuit of habeas relief.

Harris's most recent submission argues that we have authority under Fed.R.Civ.P. 60(b)(5) and (6)[1] to relieve her from our Order of April 30, 1998, which dismissed her first habeas petition as time-barred. Although we at length conclude that Harris's motion does not implicate the AEDPA's restrictions on successive habeas petitions, we nevertheless deny the motion because Harris has failed to meet her threshold burden of showing that reopening her habeas petition would not be a futile exercise.

### Background

On December 2, 1993, a jury found Harris guilty of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1), aiding and abetting in violation of 18 U.S.C. § 2, and use of a firearm in a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1).[2] We sentenced her to 240 months in jail, and our Court of Appeals affirmed her conviction and sentence on February 3, 1995. *See United States v. Christine Harris*, No. 94–1402, mem. op. (3d Cir. Feb. 3, 1995) (McKee, J.).

As a prisoner whose conviction became final before the AEDPA's enactment, Harris was required (in the absence of any grounds for extending the period of limitation) to file any § 2255 petition on or before April 23, 1997. *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998). She filed her first § 2255 petition[3] on July 7, 1997. We

---

1. Rule 60(b) provides, in relevant part, that "[o]n motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order or proceeding for the following reasons: ... (5) ... a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment."

2. We summarized the details of Harris's arrest and conviction in *United States v. Harris*, 2002 WL 31859440, at *1 (E.D.Pa. Dec.20, 2002).

3. The title to Harris's memorandum of law suggested that it supported a motion for the correction of sentence under 28 U.S.C. § 3582(c)(B). However, as we explained in our 1998 Order, she was in fact proceeding under § 2255. Harris sought leave to pro-

accordingly on April 30, 1998 denied the petition as time-barred and declined to issue a certificate of appealability. *See* Order of April 30, 1998.

Harris did not appeal our Order. Instead, she filed a *pro se* petition for habeas relief under 28 U.S.C. § 2241 on July 13, 1998. We denied this petition without prejudice because we lacked jurisdiction over her custodian at the Federal Correctional Institution in Danbury, Connecticut. *See* Order of August 5, 1998. Harris then filed a *pro se* § 2241 petition in the District of Connecticut on September 25, 1998.

After the district court judge in Connecticut appointed counsel, Harris withdrew her § 2241 petition, returned to this Court, and filed a new § 2255 petition on December 10, 2001. In an opinion filed December 20, 2002, we concluded that Harris had presented a "second or successive" § 2255 petition that we could not consider without leave of our Court of Appeals. *See Harris*, 2002 WL 31859440, at \*6. Harris filed a notice of appeal on January 11, 2003, but she then requested that the Court of Appeals remand the case to this Court so that she could file her Rule 60(b) motion. Pursuant to *Venen v. Sweet*, 758 F.2d 117, 123 (3d Cir.1985), our Court of Appeals directed Harris to seek remand only in the event that this Court granted the motion.

*Discussion*

Harris's first § 2255 petition advanced two claims. First, she argued that her sentence for possession of methamphetamine with intent to distribute should be reduced in light of *United States v. Bogusz*, 43 F.3d 82 (3d Cir.1994).[4] Second, Harris contended that, after the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), the evidence introduced at her trial could not support her § 924(c)(1) conviction.

At the time we denied the petition, we had no reason to doubt that Harris should have filed it by April 23, 1997. Harris now argues, however, that our Order dismissing her petition on timeliness grounds should be vacated pursuant to Rule 60(b) because, in retrospect, it is apparent that her *Bailey* claim was timely[5] and because, with the assistance of counsel, she can now show that in 1997 she was entitled to equitable tolling on mental health grounds. We shall begin our analysis by considering whether Harris's Rule 60(b) motion should be deemed a successive petition under the AEDPA, and then turn to decide whether Harris is actually entitled to Rule 60(b) relief.

A. *Must Harris's Rule 60(b) Motion be Construed as a Successive Habeas Petition?*

■ At the threshold, we must determine whether Harris's Rule 60(b) motion

---

ceed *in forma pauperis* in order to file a § 2255 petition, filed the petition on a form bearing the title "Motion under 28 U.S.C. § 2255", and discussed the legal standard for § 2255 petitions in her memorandum of law. *See* Order of April 30, 1998, at 1 n. 1.

**4.** The Government has conceded the merit of Harris's *Bogusz* claim, and indeed we gave her co-defendant, Harry Witherspoon, a twenty-seven month reduction in his sentence on this ground after he filed a timely § 2255 petition.

**5.** Harris argues that her *Bailey* claim was, in retrospect, timely because it was filed within months of *United States v. Davis*, 112 F.3d 118 (3d Cir.1997), in which our Court of Appeals took no exception to the district court's holding that *Bailey* applies retroactively in habeas proceedings, and before *United States v. Lloyd*, 188 F.3d 184 (3d Cir.1999) and *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), which squarely confirmed that *Bailey* is retroactively applicable on collateral review.

is actually a successive habeas petition requiring appellate authorization. *See* § 2255. Courts have devised three distinct approaches to the problem of habeas petitioners' access to Rule 60(b).

Some courts have adopted the view that a Rule 60(b) motion is *per se* the functional equivalent of a successive petition. *See Mobley v. Head,* 306 F.3d 1096, 1096–97 (11th Cir.2002); *Lopez v. Douglas,* 141 F.3d 974, 975 (10th Cir.1998); *McQueen v. Scroggy,* 99 F.3d 1302, 1335 (6th Cir.1996). The Court of Appeals for the Second Circuit has adopted the equally sweeping view that a Rule 60(b) motion to vacate a judgment denying habeas relief should never be construed as a successive habeas petition, and that "the court to which the motion is addressed might conceivably go farther and grant the habeas in response to the motion ...." *Rodriguez v. Mitchell,* 252 F.3d 191, 198–99 (2d Cir.2001).

We have grave doubts about the propriety of both of these approaches. While it is true that the AEDPA restricts habeas petitioners' access to the federal courts, there is simply no reason to conclude that Congress intended categorically to prevent them from using Rule 60(b) to secure relief from court orders tainted, for example, by fraud or mistake. On the other hand, the Second Circuit's approach runs the risk of undermining the AEDPA's limits on successive habeas petitions.

The third approach, which the majority of courts have adopted, provides that a district court should treat a Rule 60(b) motion as a successive habeas petition only when, as Judge Selya put it for the First Circuit, "the motion threatens to encroach upon precincts patrolled by the AEDPA, that is, when[ ] the factual predicate set forth in support of the motion constitutes a direct challenge to the constitutionality of the underlying conviction." *Rodwell v. Pepe,* 324 F.3d 66, 71 (1st Cir.2003); *see also Dunlap v. Litscher,* 301 F.3d 873 (7th Cir.2002); *Thompson v. Calderon,* 151 F.3d 918, 921 & n. 3 (9th Cir.1998); *United States v. Rich,* 141 F.3d 550, 551 (5th Cir.1998); *Hunt v. Nuth,* 57 F.3d 1327, 1339 (4th Cir.1995); *Guinan v. Delo,* 5 F.3d 313, 316 (8th Cir.1993); *Pridgen v. Shannon,* No. 00–4561, 2002 WL 31122131, at *5 (E.D.Pa. Sept.26, 2002) (DuBois, J.).

■ In the absence of guidance from the Supreme Court [6] or our Court of Appeals, we adopt the majority view and conclude that a petitioner may invoke Rule 60(b) to challenge a habeas dismissal unless the motion conflicts with the AEDPA's limits on collateral review. This approach protects petitioners from irregularities in habeas proceedings without trespassing on the AEDPA. It also ensures that courts can use Rule 60(b)(6), which allows relief from a judgment for "any other reason justifying relief," to avoid the inequities that may result from an inflexible application of some of the AEDPA's more infelicitously-drafted provisions. *See, e.g., Matos v. Portuondo,* 33 F.Supp.2d 317, 318–19 (S.D.N.Y.1999) (vacating order, issued before appellate decision creating one-year grace period for petitioners convicted before the AEDPA's enactment, that denied as time-barred a habeas petition filed during the grace period).

Applying this standard, we conclude that Harris's motion is cognizable under Rule 60(b) because it squarely focuses on the circumstances surrounding the filing and disposition of her 1997 habeas petition. It does not raise new arguments concerning the constitutionality of her conviction or

---

**6.** While the Supreme Court granted certiorari to resolve the Rule 60(b) question in a case last year, it later dismissed the writ of certiorari as improvidently granted. *Abdur'Rahman v. Bell,* 537 U.S. 88, 123 S.Ct. 594, 154 L.Ed.2d 501 (2002).

otherwise seek to avoid the AEDPA's barriers to successive habeas petitions.

### B. *Is Harris Entitled to Relief under Rule 60(b)?*

Having concluded that Harris may invoke Rule 60(b) to challenge our 1998 dismissal of her first § 2255 petition, we turn to consider whether her case warrants relief under the Rule.

Harris's motion raises intriguing and novel questions about the uses of Rule 60(b) in habeas cases. But before we can reach those questions, Harris must first show that her underlying claims are meritorious and that "vacating the judgment will not be an empty exercise." *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir.1992). *See also United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984) (for Rule 60(b) purposes, "[t]he showing of a meritorious defense is accomplished when 'allegations of defendant's answer, if established on trial, would constitute a complete defense to the action.' "), *quoting Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir.1951). As we now explain in some detail, we find that Harris has not satisfied this threshold requirement for Rule 60(b) relief.

#### 1. *The Bailey Claim*

■ When Pennsylvania state troopers entered Harry Witherspoon's bedroom on May 11, 1992, they discovered Witherspoon and Harris slumbering on the bed.[7] On a nightstand within Harris's reach they found a purse containing several of her identification cards, a loaded revolver with a round chambered, and 6.2 grams of methamphetamine bagged for street distribution. *See Harris*, 2002 WL 31859440, at *1. On the basis of this evidence, Harris was indicted under § 924(c)(1), which imposes a mandatory sentence on a defendant who "uses or carries a firearm" "during and in relation to any ... drug trafficking crime."

In keeping with then-standard jury instructions, our jury charge referred interchangeably to the "use" and "carry" prongs of § 924(c)(1). *See* Tr. of Dec. 2, 1993, at 32:13–19. The charge also included a definition of "use" drawn almost verbatim from *United States v. Theodoropoulos*, 866 F.2d 587, 597 (3d Cir.1989), which equated "use" with constructive possession. *See* Tr. of Dec. 2, 1993, at 32:13–19, 33:5–19.

Two years later, the Supreme Court's unanimous decision in *Bailey* overruled the broad definition of "use" underlying Harris's conviction and replaced it with a construction of § 924(c)(1) that equates "use" with "active employment." *Bailey*, 516 U.S. at 151, 116 S.Ct. 501. In *Bousley*, the Supreme Court confirmed that *Bailey* is retroactively applicable on collateral review. 523 U.S. at 620–621, 118 S.Ct. 1604.

The Government has conceded that the evidence here is insufficient to establish "use" under *Bailey*. Gov't Resp. of Sept. 26, 2002, at 9. But as Harris procedurally defaulted her *Bailey* claim on direct appeal, she is eligible for habeas relief only upon a showing that she is actually innocent of the § 924(c)(1) charge. To establish actual innocence, Harris must show that "it is more likely than not that no reasonable juror would have convicted [her]." *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604.

---

**7.** According to the testimony of Trooper Betancourt, when the troopers entered the room, "They appeared to be half awake, half asleep." Tr. of Nov. 30, 1993 at 41. Both were dishabille. *Id.*

Harris's Rule 60(b) motion is largely silent as to how she would show actual innocence were we to grant the motion and reopen her 1997 habeas proceedings. She correctly notes that there was no direct evidence introduced at trial showing that she physically transported the gun in relation to a drug trafficking crime. The absence of such evidence in the trial record is, however, not surprising because the broad definition of "use" that prevailed before *Bailey* allowed prosecutors to ignore the "carry" prong in the ordinary run of cases. More importantly, this argument would not discharge Harris's burden were we to grant this motion and consider her *Bailey* claim on the merits. Not only has the Supreme Court insisted that " 'actual innocence' means factual innocence, not mere legal insufficiency," but it has also held that for purposes of rebutting a § 924(c)(1) actual innocence claim,

> the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence … would not normally have been offered before our decision in *Bailey.*

*Bousley,* 523 U.S. at 623–24, 118 S.Ct. 1604.

Harris also contends that the Government cannot prove a violation of § 924(c)(1) because she was asleep when the police found her and the gun was on the nightstand. This argument fails because the Government was never required to prove that Harris was violating § 924(c)(1) at the moment of her arrest. Instead, as the jury charge provided, the Government's burden was to prove that Harris carried the firearm *on or about* May 11, 1992.

Even if we adopted Harris's view that "carrying" requires physical transportation[8], the evidence adduced at trial supports her conviction for violating § 924(c)(1) near the date of arrest. To begin with, the Government linked the purse containing the firearm to Harris by showing that it also contained her identification cards. *See Harris,* mem. op., at 31 (McKee, J.); *see also id.* at 9 (noting that Harris was found within arm's reach of "her purse" and that plastic bags found in the kitchen matched bags in "Harris' purse").[9] Second, the record shows that Harris was physically active and involved in drug-related activities in the days before her arrest. As Judge McKee commented,

> Trooper [Haynes] testified that on two occasions … he saw Harris enter 2618 West York Street, after leaving a car driven by Witherspoon. Each time, Harris stayed inside only a few minutes and then left in the car with Witherspoon.

*Id.* at 10 (noting that this evidence of Harris's involvement in drug sales supported her conviction for possession with intent to distribute).

Taken in conjunction with the obvious point that a woman more often than not carries the purse containing her identification cards on a daily basis, this evidence could support a jury finding that Harris

---

8. The parties sharply contest whether the "carrying" element of § 924(c)(1) requires physical transportation. *Compare United States v. Manning,* 79 F.3d 212, 216 (1st Cir. 1996), *with United States v. Kershaw,* No. 96–4466, 1996 WL 383309, at *2 (E.D.Pa. July 2, 1996) (Weiner, J.).

9. It is also telling that, although Harris challenged on direct appeal the sufficiency of the evidence supporting her conviction for possession with intent to distribute, she did not so challenge her (pre-*Bailey*) § 924(c)(1) conviction.

"carried" the firearm in the time preceding her arrest, whether on her rounds through Philadelphia or in the house, where police recovered (from both floors) drug distribution supplies and almost three hundred grams of methamphetamine. Finally, a jury has already found that the gun was in Harris's purse "in relation to" a drug crime, presumably to protect either the stash in her purse or the methamphetamine secreted in the house. *Accord United States v. Bailey*, 235 F.3d 1069, 1073 (8th Cir.2000) (noting that firearms facilitate a drug conspiracy by reassuring the conspirators that "they ha[ve] protection for themselves, the drugs, and the drug proceeds").

It is certainly possible, at least at the margins of probability, that this firearm found its way into Harris's purse without her "carrying" it on the street or through the house. Witherspoon, for example, could have placed it there after Harris had fallen asleep but before the police entered the room. But Harris has never come forward with a counter-narrative that might undermine the inferences a reasonable jury would draw from the evidence in the case. We therefore conclude that Harris has failed to demonstrate that she could show actual innocence in support of her *Bailey* claim, and there is accordingly no basis for granting her Rule 60(b) motion.

### 2. The Bogusz Claim

■ As we have noted, the Government has also conceded the merit of Harris's *Bogusz* claim, and the only barrier to relief is that Harris filed her first habeas petition after April 23, 1997. Harris contends that if we grant her Rule 60(b) motion, she

can demonstrate that she was entitled to equitable tolling on mental health grounds for the period between April 24, 1997, and July 7, 1997, when she mailed her habeas petition from FCI Danbury. Because it would be futile for us to reopen Harris's *Bogusz* claim merely to dismiss it again as time-barred, we must inquire into the sufficiency of her equitable tolling argument.

■ The AEDPA's one-year limitation period is not jurisdictional and is subject to equitable tolling for a petitioner who has been reasonably diligent in investigating and bringing claims but "has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir.1998).

■ Harris cites *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir.2001), for the proposition that she is entitled to equitable tolling for the "mental health problems" she experienced in 1997. But our Court of Appeals has never held that "mental health problems," an undefined and expansive category, constitutes a basis for equitable tolling. Instead, *Nara* announces the far narrower principle that equitable tolling *may* be available in cases of mental incompetence, which one court has defined as an inability to pursue one's legal rights[10], provided there is a nexus between the petitioner's mental condition and her inability to file a timely petition. *Id.* at 320; *see also Rhodes v. Senkowski*, 82 F.Supp.2d 160, 170 (S.D.N.Y.2000) (defining mental incompetence). Contrary to Harris's assertion, a mental condition that burdens but does not prevent a prisoner from filing a timely petition does not constitute "extraordinary circumstances" justifying equitable tolling. *See Martin*, 41

---

10. We note that some recent equitable tolling decisions have more narrowly defined mental incompetence as the inability even to assist others in the preparation of the habeas petition. *See Martin v. Ayers*, 41 Fed.Appx. 972, 973 (9th Cir.2002); *McFarland v. Cockrell*, 2002 WL 31360395, at *3 (N.D.Tex. Oct.15, 2002).

Fed.Appx. at 973; *McFarland,* 2002 WL 31360395, at *3; *Torres v. Miller,* 1999 WL 714349, at *8 (S.D.N.Y. Aug.27, 1999). Moreover, recent cases have emphasized that depression, even if severe, is "a normal incident of prison life" that does not excuse an untimely filing. *See, e.g., Martin,* 41 Fed.Appx. at 973.

In support of her equitable tolling claim, Harris offers the diagnostic evaluation of Hadar Lubin, M.D., Director of the Yale University Post Traumatic Stress Center, which was prepared on May 5, 2001 in support of Harris's second § 2255 petition. Dr. Lubin diagnoses Harris with post traumatic stress disorder and major depression and opines that these conditions impair her ability to keep track of timelines and dates. Lubin Eval. at 8. Dr. Lubin concludes that these symptoms "interfered with [Harris's] capacity to effectively protect her rights and file the habeas petition in a timely manner," and she adds that the murder of Harris's son in March 1997, only a few weeks before her § 2255 was due, "undoubtedly distracted her from that task." *Id.* at 8–9.

Dr. Lubin's expert opinion supports the conclusion that Harris was depressed, anxious, and grieving in the spring of 1997, and we do not doubt that Harris's mental condition, aggravated by the tragic death of her son, burdened her efforts to file her habeas petition. Yet even on the most generous reading of Dr. Lubin's report, there is no evidence that Harris was mentally incompetent in the sense that her personal circumstances *prevented* her from filing a timely petition. We therefore find that Harris has not made a threshold showing that she can satisfy the stringent requirements for equitable tolling that our Court of Appeals has developed in cases such as *Miller* and *Nara.*

*Conclusion*

The AEDPA does not preclude Harris from attempting to use Rule 60(b) to vacate our dismissal of her first § 2255 petition. Like any litigant who invokes Rule 60(b), however, Harris must first show that reopening her case would not be an empty gesture.

Even if we resolved in Harris's favor all of the knotty questions about the use of Rule 60(b) in habeas cases that this motion raises, Harris has not shown that she could ultimately prevail on the merits of her claims. As we explain above, Harris has not set forth a plausible theory of how she would demonstrate actual innocence, which is a predicate for relief on her *Bailey* claim, and she has not shown that she could establish her eligibility for equitable tolling were we to reopen her *Bogusz* claim. For these reasons, we must deny this motion.