Anthony HARPER, Petitioner,

v.

Donald T. VAUGHN, Attorney General of the Commonwealth of Pennsylvania, and District Attorney of Philadelphia County, Respondents.

Civil Action No. 98–728.

United States District Court, E.D. Pennsylvania.

July 23, 2003.

for first degree murder and a consecutive sentence of ten-to-twenty years for robbery at the State Correctional Institute in Graterford, Pennsylvania. Presently before the Court is petitioner's *pro se* submission entitled "Relief From Judgment or Order Under Rule 60(b)," filed on May 28, 2003 ("Rule 60(b) Motion").

In the Rule 60(b) Motion, petitioner seeks relief from the Memorandum and Order dated February 21, 2002, denying his Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 ("Petition"). He raises two arguments in that Motion. First, he argues that the Court committed error in failing to review his claim of actual innocence under the analysis employed by the Second Circuit in *Whitley v. Senkowski*, 317 F.3d 223 (2d Cir.2003). Second, he argues that the Court failed to grant him a "fair hearing" on his Petition. For the reasons set forth in this Memorandum, the Court denies the Rule 60(b) Motion.

## II. *BACKGROUND*

In this Memorandum, the Court will set forth only the facts and procedural history necessary to analyze the Rule 60(b) Motion. A detailed factual and procedural history may be found in Magistrate Judge Angell's Report and Recommendation dated February 20, 2001 and the Court's previously reported opinion in this case. *See Harper v. Vaughn*, No. 98–728, 2002 WL 257850, at *1–2 (E.D.Pa. Feb. 21, 2002); Report and Recommendation at 2–3 (Feb. 20, 2001) (quoting *Commonwealth v. Harper*, 346 Pa.Super. 105, 499 A.2d 331, 333–34 (1985)).

On February 13, 1998, petitioner filed a *pro se* Petition in federal court alleging eighteen claims for relief. A subsequent counseled memorandum of law narrowed the claims for relief to five. By Report and Recommendation dated February 20,

Anthony Harper, Graterford, PA, Teri Himebaugh, Abramson and Denenberg PC, Philadelphia, PA, for Petitioner.

John W. Goldsborough, District Attorney's Office, Thomas W. Dolgenos, District Attorney's Office, Assistant District Attorney, Philadelphia, PA, for Respondents.

### *MEMORANDUM*

DuBOIS, District Judge.

## I. *INTRODUCTION*

Petitioner, Anthony Harper, is a state prisoner currently serving a life sentence

2001,[1] Magistrate Judge Angell recommended that the Petition be denied without an evidentiary hearing. Magistrate Judge Angell's recommendation was based, *inter alia*, on her conclusions that (1) several of petitioner's claims were procedurally defaulted and (2) petitioner had not satisfied his burden to excuse the procedural default through his "bald assertions" of "cause and prejudice" and "actual innocence." Report and Recommendation at 13. Magistrate Judge Angell recommended that the remaining claims be denied on the merits.

Petitioner thereafter filed objections to the Report and Recommendation on March 7 and 8, 2001.[2] In objecting to the Report and Recommendation, petitioner argued that the Court's failure to consider his procedurally defaulted claims would result in a fundamental miscarriage of justice. By Memorandum and Order dated February 21, 2002, after *de novo* consideration[3] of the Report and Recommendation and petitioner's objections, the Court overruled the objections, adopted the Report and Recommendation and declined to hold an evidentiary hearing. *Harper*, 2002 WL 257850, at *3–10. The Court ruled that the state trial court's findings of fact were not unreasonable in light of the evidence presented and that petitioner had failed to present sufficient evidence supporting his claim of actual innocence to overcome any procedural default. The Court also declined to issue a certificate of appealability because petitioner had failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(3).

On March 22, 2002, petitioner filed a Notice of Appeal of this Court's decision in the Court of Appeals for the Third Circuit. Thereafter, he filed a motion for a certificate of appealability in that court. By letter dated April 3, 2002, the motion was referred to a panel of the Third Circuit for consideration.[4] *See* Letter from Laura L. Greene, Staff Attorney, Legal Division of the Office of the Clerk, U.S. Court of Appeals, to Teri B. Himebaugh, Esq., at 1 (Apr. 3, 2002). By Order dated November 27, 2002, a three judge panel of the Third Circuit Court of Appeals denied petitioner's motion for a certificate of appealability. The denial of petitioner's motion for a certificate of appealability was based on the three judge panel's finding that "[a]ppellant ha[d] failed to make a substantial showing of the denial of a constitutional right." *Harper v. Vaughn*, No. 02–1826 slip op. (3d Cir. Mar. 27, 2002) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Petitioner thereafter filed a *pro se* submission entitled "Appeal to Set Aside Verdict of District Court Decision for Not

---

1. The lengthy delay between the filing of the Petition and the Report and Recommendation was due to a docketing error by the Clerk's Office following a return of the Petition to this Court by the Court of Appeals. *See Harper v. Vaughn*, No. 98–728, 2002 WL 257850, at *1 n. 1 (E.D.Pa. Feb. 21, 2002) (explaining docketing error).

2. Petitioner filed a duplicate set of objections in this Court.

3. The Court's standard of review in evaluating a Report and Recommendation is *de novo*. 28 U.S.C. § 636(b).

4. The Third Circuit's practice with respect to applications for certificates of appealability in habeas cases is set forth at Third Circuit Local Appellate Rule 22.3. That Rule provides that "[a]n application for a certificate of appealability will be referred to a panel of three judges. If all the judges on the panel conclude that the certificate should not issue, the certificate will be denied, but if any judge of the panel is of the opinion that the applicant has made the showing required by 28 U.S.C. § 2253, the certificate will issue."

Turning Over A True Copy of Memorandum" in the Third Circuit on April 25, 2003. In that submission, petitioner stated that he had filed a petition for certiorari in the United States Supreme Court and was told by letter from the Clerk of Court that the Supreme Court would not review his petition for certiorari because the copy of this Court's Memorandum and Order dated February 21, 2002 that petitioner had attached to his petition for certiorari was incomplete. Petitioner further stated in his *pro se* Appeal that he "didn't receive a full copy of Judge DuBois's memorandum nor did the Appeals Court" and, therefore, "the decision should be made to set aside the verdict by the District Court." The Clerk of Court for the United States Court of Appeals for the Third Circuit responded to petitioner's *pro se* Appeal on May 16, 2003 and informed him that no action would be taken with respect to that submission because proceedings in that court had concluded and the Third Circuit "lack[ed] authority to grant substantive relief." The Clerk further noted that the copy of this Court's Memorandum and Order dated February 21, 2002 certified to

the Third Circuit was complete and, therefore, the panel that rejected his motion for a certificate of appealability made its decision based on a review of a complete copy of this Court's Memorandum and Order.

Petitioner thereafter filed the instant Rule 60(b) Motion in this Court on May 28, 2003.

## III. *DISCUSSION*

### A. APPLICABILITY OF THE AEDPA LIMITATION ON SECOND OR SUCCESSIVE HABEAS PETITIONS TO A MOTION FILED UNDER FEDERAL RULE OF CIVIL PROCEDURE 60(b)

Before passing on the merits of petitioner's Rule 60(b) Motion, the Court must determine whether that motion is, in essence, a second or successive § 2254 habeas motion. Such a ruling is necessary because the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, Pub.L. No. 104–132, 110 Stat. 1214, limits a petitioner's ability to bring a second or successive habeas petition. *See* 28 U.S.C. § 2244(b).[5] A state prisoner seeking to

---

5. That section of the AEDPA provides, *inter alia*, as follows:

(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.

(2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless—

(A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(B) (I) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and

(ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for

constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(3) (A) Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

(B) A motion in the court of appeals for an order authorizing the district court to consider a second or successive application shall be determined by a three-judge panel of the court of appeals.

(C) The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection.

. . . .

28 U.S.C. § 2244(b).

file a second or successive § 2254 habeas petition must, as a preliminary step, obtain an order from the appropriate court of appeals authorizing the district court to consider such a motion. *See* 28 U.S.C. § 2244(b)(3)(A).

The Third Circuit has not directly addressed the question of whether a Rule 60(b) motion to vacate a judgment denying habeas relief is considered a second or successive habeas petition. A number of courts in this and other circuits have adopted the view that a Rule 60(b) motion is *per se* the functional equivalent of a successive petition and therefore cannot be considered by a district court without authorization from the court of appeals in the circuit in which that court sits. *See Pridgen v. Shannon,* No. CIV.A. 00–4561, 2002 WL 31122131, at *3 n. 5 (E.D.Pa. Sept.26, 2002) (collecting cases). The Second Circuit has adopted the equally sweeping view that a Rule 60(b) motion to vacate a judgment denying habeas relief should never be construed as a successive habeas petition, and "[t]he fact that the court to which the motion is addressed might conceivably go farther and grant the habeas in response to the [Rule 60(b) ] motion does not … make such a motion a second habeas petition." *Rodriguez v. Mitchell,* 252 F.3d 191, 199 (2d Cir.2001).

The First and Seventh Circuits have adopted a third approach. *Rodwell v. Pepe,* 324 F.3d 66, 71 (1st Cir.2003); *Dunlap v. Litscher,* 301 F.3d 873 (7th Cir. 2002); *Banks v. United States,* 167 F.3d 1082 (7th Cir.1999) (*per curiam* ). Those Circuits held that a district court should treat a Rule 60(b) motion as a successive habeas petition requiring prior Court of Appeals authorization only if the Rule 60(b) motion challenges the underlying conviction. If, instead, the Rule 60(b) motion challenges the integrity of the federal habeas proceedings, it is allowed to proceed without prior Court of Appeals authorization. *Rodwell,* 324 F.3d at 71; *Banks,* 167 F.3d at 1084.

This Court, in *Pridgen,* 2002 WL 31122131, at *3 & n. 5, noting the absence of guidance from either the Third Circuit or the Supreme Court on this issue,[6] opted to follow the rationale adopted by the Seventh Circuit.[7] It did so because "adoption of the approach utilized by the Second Circuit in *Rodriguez* would mean that in virtually every case in which a prisoner contends he has newly discovered evidence of his innocence or trial error—the very relief sought in the original habeas corpus proceeding—the limitations on second or successive habeas motions imposed by the AEDPA could be avoided by resort to Rule 60(b)." *Id.* at *5; *see also United States v. Harris,* 252 F.Supp.2d 500, 504, 2003 WL 21361432, at *3 (E.D.Pa. June 9, 2003) (Dalzell, J.) (ruling "… that a petitioner may invoke Rule 60(b) to challenge a habeas dismissal unless the motion conflicts with the AEDPA's limits on collateral review"). This Court also rejected as unduly restrictive the view that a Rule 60(b)

---

**6.** While the Supreme Court granted certiorari in a case last year to decide the circumstances, if any, in which a prisoner in a proceeding governed by the AEDPA can invoke Rule 60(b), it later dismissed the writ of certiorari as improvidently granted. *See Abdur'Rahman v. Bell,* 537 U.S. 88, 123 S.Ct. 594, 154 L.Ed.2d 501 (2002) (No. 01–9094).

**7.** The First Circuit's decision in *Rodwell* was handed down after this Court decided *Prid-*

*gen.* The Court notes, however, that *Rodwell* is entirely consistent with the approach utilized by the Seventh Circuit and this Court's discussion in *Pridgen. See Rodwell,* 324 F.3d at 71 ("[A] district judge should treat a Rule 60(b) motion … as a second or successive habeas petition … whenever the factual predicate set forth in support of the motion constitutes a direct challenge to the constitutionality of the underlying conviction.")

motion to vacate a judgment denying habeas relief should always be treated as a second or successive habeas petition.

█ This Court concludes that petitioner's Rule 60(b) Motion focuses on the circumstances surrounding the filing and disposition of his 1998 habeas petition. It does not raise arguments concerning the constitutionality of his conviction or otherwise seek to avoid AEDPA barriers to successive habeas petitions. Thus, authorization from the Third Circuit is not required and this Court will consider the issues raised in the Rule 60(b) Motion.

### B. PETITIONER IS NOT ENTITLED TO RELIEF UNDER RULE 60(b)

█ "The decision to grant or deny relief pursuant to Rule 60(b) lies in the 'sound discretion of the trial court guided by accepted legal principles applied in light of all the relevant circumstances.'" *United States v. Hernandez*, 158 F.Supp.2d 388, 392 (D.Del.2001) (quoting *Ross v. Meagan*, 638 F.2d 646, 648 (3d Cir.1981)).

█ Petitioner filed his motion under Rule 60(b) but did not identify the subsection of that Rule under which he seeks relief. The Court concludes that the only arguable ground for the relief sought by

petitioner in the Rule 60(b) Motion is the catchall provision of Rule 60(b)(6).[8] Rule 60(b)(6) provides that the Court may act to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b)(6). "Relief under Rule 60(b)(6) 'is available only in cases evidencing extraordinary circumstances.'" *Morris v. Horn*, 187 F.3d 333, 341 (3d Cir.1999) (quoting *Reform Party v. Allegheny County Dep't of Elections*, 174 F.3d 305, 311 (3d Cir. 1999) (*en banc*) (further citation omitted)). Although some courts have recognized that, under Rule 60(b)(6), "[i]n the exceptional case ... an action may be reinstated on account of an intervening change in the law," *Tal v. Miller*, Civ. A. No. 97–2275, 1999 WL 38254 (S.D.N.Y. Jan. 27, 1999), "[i]ntervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief under Rule 60(b)(6)." *Agostini v. Felton*, 521 U.S. 203, 239, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (citing James Wm. Moore *et al.*, *Moore's Federal Practice* § 60.48[5][b], at 60–181 (3d ed.1997) (collecting cases)); *accord Marshall v. Bd. of Educ.*, 575 F.2d 417, 425 (3d Cir.1978). Furthermore, "a Rule 60(b) motion may not be used as a substitute for appeal, and that legal error, without more, cannot justify granting a Rule 60(b) motion." *Smith v. Evans*, 853 F.2d 155, 158 (3d Cir.1988).

---

**8.** Although the Court concludes that the catchall provision of Rule 60(b)(6) is the only subsection of Rule 60(b) that arguably supports petitioner's claims, the Court notes that petitioner includes language from Rule 60(b)(2) at the end of the Rule 60(b) Motion— "I pray that this Court grant this motion under rule 60(b) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new hearing[.]"

Petitioner cannot rely on Rule 60(b)(2) in seeking relief. First, a motion under Rule 60(b)(2) must be made "... not more than

one year after the judgment, order, or proceeding was entered...." The Court issued its Memorandum and Order denying his petition for writ of habeas corpus under 28 U.S.C. § 2254 on February 21, 2002. Petitioner filed the Rule 60(b) Motion on May 28, 2003, which was more than one year after the February 21, 2002 Memorandum and Order was issued. Additionally, petitioner has failed to identify any evidence or argue the existence of new evidence that could not have been discovered earlier through the exercise of due diligence.

1. *The Court Rejects Petitioner's Claim That the Court Did Not Properly Analyze His Claim of Actual Innocence*

■ Petitioner first argues that the Court committed error in failing to review his claim of actual innocence under the analysis employed by the Second Circuit in *Whitley v. Senkowski,* 317 F.3d 223 (2d Cir.2003). Specifically, petitioner states in the Rule 60(b) Motion that he raised the issue of actual innocence[9] in the Petition and "was not given time to prove his case." Rule 60(b) Motion, *supra,* at 529.[10] He further argues that, under *Whitley,* "it is error for a district court, without further analysis, to dismiss, [a] habeas corpus petition that claims actual innocence." *Id.*

a. **The *Whitley* Decision**

Analysis of petitioner's argument first begins with an examination of the Second Circuit's recent decision in *Whitley.* In *Whitley,* the petitioner, a New York state prisoner, petitioned for a writ of habeas corpus in the United States District Court for the Southern District of New York. Among the claims Whitley raised was that he was "actually innocent" of the crimes for which he had been convicted. *See id.* at 224. The district court denied Whitley's petition as untimely under the AEDPA statute of limitations[11] without addressing the merits of his actual innocence claim. *See id.* at 225.

The Second Circuit reversed the district court's denial of Whitley's petition and held that "it was error for the district court, without further analysis, to dismiss, on statute of limitations grounds, Whitley's petition, which claimed actual innocence." *Id.* That court did not rule that "constitutional considerations require[d] an actual innocence exception to the AEDPA's statute of limitations" because Whitley's case did not present appropriate circumstances for resolving that question. *Id.*

The Second Circuit remanded the case to the district court to consider "whether Whitley was reasonably diligent in pursuing his claim of actual innocence and, if not, whether reasonable diligence is a precondition of pressing his constitutionally based actual innocence claim." *Id.* In remanding the case to the district court, the Second Circuit set forth the following framework for the district court to analyze Whitley's actual innocence claim:

(1) Did Whitley pursue his actual innocence claim with reasonable diligence? (2) If Whitley did not pursue the claim with reasonable diligence, must an actual innocence claim be pursued with reasonable diligence in order to raise the issue of whether the United States Constitution requires an "actual innocence" exception to the AEDPA statute of limitations? (3) If Whitley did pursue the claim with reasonable diligence or if reasonable diligence is unnecessary, does Whitley make a credible claim of actual innocence? (4) If Whitley does make a

---

9. A district court may consider procedurally defaulted claims on the merits if, *inter alia,* "a constitutional violation has probably resulted in the conviction of one who is actually innocent ...." *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639 (1986); *see also Harper,* 2002 WL 257850, at *3 (explaining actual innocence standard and evidentiary burden on proponent of actual innocence claim).

10. The Rule 60(b) Motion docketed with the Court is two pages long. The second page is

numbered "3." When referring to the Rule 60(b) Motion, the Court shall use the pagination supplied by petitioner.

11. The AEDPA imposes a one-year statute of limitations on habeas corpus petitions brought after April 24, 1996. The statute of limitations applies to petitions under both § 2254 and § 2255. *See* 28 U.S.C. § 2244(d)(1).

credible claim of actual innocence, does the United States Constitution require an "actual innocence" exception to the AEDPA statute of limitations on federal habeas petitions?

*Id.* at 225–26 (footnote omitted).

Both the Supreme Court and the Third Circuit have yet to decide whether there is an "actual innocence" exception to the AEDPA statute of limitations.[12]  However, it is unnecessary for this Court to determine whether there is such an exception to the AEDPA statute of limitations because the issue is not presented under the facts of this case.

**b. The Court Did Not Refuse to Address Petitioner's Claim of Actual Innocence on Statute of Limitations Grounds**

Unlike *Whitley*, and contrary to petitioner's contention, this Court did not refuse to address petitioner's claim of actual innocence on statute of limitations grounds.

Rather, in adopting Magistrate Judge Angell's Report and Recommendation and overruling petitioner's objections, the Court fully analyzed petitioner's actual innocence claim on the merits.

In the Report and Recommendation, Magistrate Judge Angell found the following claims to be procedurally defaulted:

A.  Petitioner's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court did not suppress petitioner's allegedly involuntary confession, which confession was manufactured by police officers after the officers beat and otherwise abused petitioner.

  1.  Petitioner did not receive *Miranda* warnings before his alleged confession.

. . . .

  6.  The "official police finding" that petitioner was not beaten is unreliable because the detectives who beat petitioner are the same ones

**12.** The issue of whether the Constitution requires an "actual innocence" exception to the AEDPA statute of limitations was presented to the Third Circuit in *Hussmann v. Vaughn*, No. 01–1724, 2003 WL 1924693 (3d Cir. Apr. 24, 2003). In a nonprecedential decision, the Third Circuit declined to rule on the issue, noting that in light of the court's conclusion that the petitioner "has no basis to assert a claim of actual innocence, we will not go on to consider ... [w]hether there is there an 'actual innocence' exception to AEDPA's statute of limitations...." *Id.*

To date, the Fifth Circuit is the only Court of Appeals to have decided whether the Constitution requires an "actual innocence" exception to the AEDPA statute of limitations. That court held there was no such exception, noting that 28 U.S.C. § 2244(d) "contains no explicit exemption for petitioners claiming actual innocence of the crimes of which they have been convicted." *Cousin v. Lensing*, 310 F.3d 843, 849 (5th Cir.2002). In so ruling, the Fifth Circuit did not address the merits of the claim of actual innocence.

Some district courts have explicitly held that there is an actual innocence exception to

the AEDPA statute of limitations. *See Holloway v. Jones*, 166 F.Supp.2d 1185, 1190 (E.D.Mich.2001); *see also Neuendorf v. Graves*, 110 F.Supp.2d 1144, 1157 (N.D.Iowa 2000) (collecting cases). Other district courts have recognized the possibility that an actual innocence exception may apply to habeas petitions that are time-barred but have declined to address the issue on the facts presented. *See, e.g., Flanders v. Graves*, 299 F.3d 974, 978 (8th Cir.2002); *Whalen v. Randle*, 37 Fed. Appx. 113, 120 (6th Cir.2002); *Knowles v. Merkle*, 27 Fed. Appx. 738, 739 (9th Cir.2001); *Helton v. Sec'y for Dep't of Corr.*, 259 F.3d 1310, 1315 n. 2 (11th Cir.2001); *United States v. Stubbs*, 229 F.3d 1165, 2000 WL 1174656 (10th Cir.2000) (table); *Douglas v. Beard*, No. CIV.A. 00–4935, 2002 WL 550474, at *5–6 (E.D.Pa. Apr.12, 2002) (Padova, J.); *Abu-Jamal v. Horn*, —— F.Supp.2d ——, No. CIV. A. 99–5089, 2001 WL 1609761, at *10–11 (E.D.Pa. Dec. 18, 2001) (Yohn, J.); *Woods v. Brennan*, No. Civ.A. 99–5240, 2001 WL 1428343, at *3 (E.D.Pa. Nov. 9, 2001) (Padova, J.).

who interviewed petitioner while he was in a hospital after the interrogation.

7. Trial counsel was ineffective for failing to challenge the credibility of the "official police finding" at a suppression hearing or at trial.

. . . .

D. Petitioner's Sixth Amendment rights to effective assistance of counsel were violated due to trial counsel's illness, inattentiveness, and lack of preparation.

1. Counsel was seriously ill during pretrial and trial proceedings.

2. Counsel interviewed petitioner for only ten minutes before trial.

. . . .

. . . .

*Harper*, 2002 WL 257850, at *1–2. In objecting to Magistrate Judge Angell's Report and Recommendation, petitioner argued that, notwithstanding the procedural default of these claims, the Court should consider those claims on the merits on the ground that the alleged constitutional violations have "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

In analyzing petitioner's objections, the Court in its Memorandum dated February 21, 2002 first set forth the test for establishing the probability of actual innocence referenced in *Carrier* as follows:

To establish the probability of actual innocence referenced in *Carrier*, "petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995); *see also Whitney v. Horn*, 280 F.3d 240, 260–61 (3d Cir.2002) (explaining *Schlup* standard); *Glass v. Vaughn*, 65 F.3d 13, 16 (3d Cir.1995) (same). Petitioner must also "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. In evaluating petitioner's assertions of actual innocence, the Court considers *all* relevant evidence, regardless of whether it "was either excluded or unavailable at trial." *Id.* at 328, 115 S.Ct. 851. It is not, however, this Court's "independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329, 115 S.Ct. 851. The Court must ask, then, whether "in light of the new evidence, no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt." *Id.*

*Harper*, 2002 WL 257850, at *3.

The Court observed in its February 21, 2002 Memorandum that petitioner's objections did not specifically identify which pieces of evidence could be considered in evaluating the actual innocence claim.[13]

**13.** In the February 21, 2002 Memorandum, the Court referred to "new" evidence in evaluating petitioner's actual innocence claim. Notwithstanding that reference to "new" evidence, the Court analyzed petitioner's actual innocence claim in light of all the evidence in the record in accordance with the analysis adopted in *Schlup* for claims of actual innocence. On that issue the *Schlup* Court stated that "[t]he habeas court must make its determination concerning the petitioner's innocence 'in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial.'" *Id.* at 328, 115 S.Ct. 851

After *de novo* review of the record, the Court identified three such pieces of evidence:

> (1) evidence that the same detective who allegedly coerced petitioner into giving a confession, Detective Gerrard, also coerced defendants or witnesses on at least five separate occasions, *see* Pet.'s Mem. of Law at 16; (2) testimony from two doctors who examined petitioner after his interrogation that allegedly would have corroborated petitioner's claims that he was beaten, *see id.* at 29; and (3) testimony as to certain exculpatory facts from a witness, Marcel Harper, whose testimony had been limited by the trial court in light of the witness' failure to comply with a sequestration order, *see id.* at 31.

*Harper*, 2002 WL 257850, at *3 (footnote omitted). The Court then analyzed each piece of evidence and concluded that the evidence was insufficient to support a finding that " 'no juror, acting reasonably, would have voted to find [petitioner] guilty beyond a reasonable doubt.' " *Id.* at *3 (quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)); *see also id.* at *4–5 (analyzing petitioner's actual innocence claim under rubric of *Murray* and *Schlup* ).

First, with respect to the evidence relating to Detective Gerrard, the Court held that, even assuming its admissibility,[14] "a rational jury still could have found that petitioner voluntarily confessed" because the fact that Detective Gerrard may have coerced other defendants was not disposi-

tive of whether he had coerced petitioner into confessing. *Id.* at *4. Second, the Court held that the proffered evidence of the two doctors would have been cumulative to evidence presented at trial that petitioner was injured after entering police custody. *Id.* The Court then considered the cumulative impact of the testimony of the two doctors and the evidence of Detective Gerrard's reputation for coercing confessions and concluded that "there was sufficient evidence—even without the voluntary confession—to convict petitioner." *Id.*

The Court then addressed the third piece of evidence presented in support of petitioner's claim of actual innocence—the testimony of Marcel Harper—and found it "equally unhelpful." *Id.* at *5. Specifically, the Court noted that Marcel Harper was permitted to testify in a limited manner and only was precluded from testifying as to four facts: (1) the fact that petitioner could read and write and thus would have signed his own confession, (2) the fact that petitioner did not own a grey pull-over sweatshirt, which was an item other witnesses testified that the murderer was wearing, (3) testimony that the second-floor window, out of which someone tossed the murder weapon, was always open, and (4) the fact that no one tossed a gun out of the window in the witness' presence. *Id.* The Court concluded that none of these facts would have "establish[ed] that no rational juror could have voted to convict petitioner." *Id.*

---

(quoting Henry J. Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L.Rev. 142, 160 (1970)) (footnote omitted).

**14.** The Court observed that such evidence may not have been admissible under Federal Rule of Evidence 404(b). That rule provides that "[e]vidence of other crimes, wrongs, or

acts is not admissible to prove the character of a person in order to show action in conformity therewith." The rule further provides, however, that such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The Court, after analyzing the actual innocence claim on the merits and determining that none of the evidence underlying the claim would have prevented a rational jury from voting to convict petitioner, concluded with the following statement: "Accordingly, the Court will not consider petitioner's procedurally defaulted claims: A.1, A.6, A.7, D.1, and D.2." Perhaps a better choice of words would have been: "Accordingly, the Court concludes petitioner's claim of actual innocence is without merit." Notwithstanding the Court's choice of words in the February 21, 2002 Memorandum, the result is the same—the Court analyzed the claim of actual innocence and concluded it was without merit.

■ Petitioner's Rule 60(b) Motion does not identify any new evidence or argue the existence of new evidence that would demonstrate his actual innocence of first degree murder and robbery—the crimes for which he was convicted; other than citing to *Whitley*, the Rule 60(b) Motion is silent as to how he would show actual innocence were the Court to grant the motion and reopen his habeas proceedings. Moreover, *Whitley* is not the law of this circuit and, while persuasive, it is not dispositive of how the Third Circuit would rule on the question of whether there is an actual innocence exception to the AEDPA statute of limitations. Even if *Whitley* were the law in this Circuit, the Court concludes that application of the framework adopted by the Second Circuit in that case would not aid petitioner in this case because this Court analyzed the actual innocence claim on the merits and determined that petitioner had not presented a credible claim of actual innocence; it did not dismiss the habeas petition as time-barred.

Thus, the Court denies petitioner's Rule 60(b) Motion on this ground.

### 2. *The Court Rejects Petitioner's Claim That the Court Should Have Held a Hearing on Petitioner's Claim of Actual Innocence*

Defendant also argues that he is entitled to relief under Rule 60(b) because he was not granted a "fair hearing" on his Petition. In support of that argument, he cites the Fifth Circuit's decision in *Brown v. Johnson*, 224 F.3d 461 (5th Cir.2000), which he argues "further supports petitioners [sic] claim which [sic] a fair hearing was not granted." Rule 60(b) Motion, *supra*, at 529.

In *Brown*, the petitioner was convicted of murder and sentenced to thirty years imprisonment. He did not appeal his conviction. After the denial of two state habeas petitions, he petitioned for a writ of habeas corpus under 28 U.S.C. § 2254. In that petition, he set forth seven ineffective assistance of counsel claims, arguing that his lawyer rendered constitutionally deficient assistance by, *inter alia*, (1) failing to interview witnesses whose testimony would have added credibility to one of his defenses and (2) denying him the right to appeal by advising him not to appeal his conviction because he would be eligible for parole in eighteen to twenty-two months, long before his appeal could be decided. The magistrate judge to whom the petition was referred asked the state to submit a statement of facts relating to the failure to interview witnesses claim. The state submitted a lengthy affidavit from Brown's state court trial attorney that "exceed[ed] the magistrate judge's invitation" and responded not only to the failure to interview claim but to all of the claims in the petition, including the denial of the right to appeal claim. *Id.* at 464. In response to the affidavit, Brown submitted four affidavits containing evidence that was not presented to the state courts. Those affidavits directly responded to the affidavit

from Brown's state court trial attorney. The district court denied the petition and declined to conduct an evidentiary hearing, holding, *inter alia,* that the new affidavits submitted by Brown raised unexhausted issues and, since none of the exceptions to the exhaustion rule applied, the Court could not consider them.

The Fifth Circuit reversed, holding that the district court committed error in relying solely on the affidavit of Brown's trial attorney in denying Brown's habeas petition. The court ruled that because petitioner had presented a facially adequate claim of ineffective assistance of counsel, it was error for the district court to dismiss the habeas petition, relying solely on the affidavit from trial counsel, without holding an evidentiary hearing. *Id.* at 467.

■ The *Brown* court's reasoning is inapplicable to this case. First, the *Brown* court granted relief based on its finding that Brown had presented a facially adequate claim of ineffective assistance of counsel. As summarized in § III.B.1 of this Memorandum, *supra,* this Court analyzed petitioner's actual innocence claim and held that even had the jury considered some or all of the proffered evidence, the evidence was insufficient to support a finding that no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Thus, unlike *Brown,* petitioner has not set forth a facially adequate claim, and the Court's resolution of his actual innocence claim without a hearing was proper. Second, in the Rule 60(b) Motion, petitioner has " 'failed to forecast any evidence beyond that already contained in the record' that would help his cause, 'or otherwise to explain how his claim would be advanced by an evidentiary

hearing.' " *Campbell v. Vaughn,* 209 F.3d 280, 287 (3d Cir.2000) (quoting *Cardwell v. Greene,* 152 F.3d 331, 338 (4th Cir.1998)).

Thus, the Court denies petitioner's Rule 60(b) Motion on this ground.

## C. THE COURT WILL NOT ISSUE A CERTIFICATE OF APPEALABILITY

■ Having denied petitioner's Rule 60(b) Motion, the Court also declines to issue a certificate of appealability. In the Third Circuit, a certificate of appealability from the denial of a Rule 60(b) motion is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." *Morris v. Horn,* 187 F.3d 333, 340 (3d Cir.1999). For the reasons set forth in this Memorandum, the Court concludes that petitioner has not made a credible showing that this Court's procedural ruling was incorrect or a substantial showing of a deprivation of constitutional rights.

## IV. CONCLUSION

For the foregoing reasons, the *pro se* submission entitled "Relief From Judgment or Order Under Rule 60(b)," filed by petitioner, Anthony Harper, is denied.

An appropriate Order follows.

### ORDER

AND NOW, this 23rd day of July, 2003, upon consideration of the *pro se* submission of petitioner, Anthony Harper, entitled "Relief From Judgment or Order Under Rule 60(b)" (Document No. 29, filed May 28, 2003),[1] for the reasons set forth in

---

1. Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts provides as follows: "The petition [for writ of habeas corpus under 28 U.S.C. § 2254] shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the

face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." In accordance

the attached Memorandum, **IT IS OR-DERED** as follows:

1. The *pro se* submission of petitioner, Anthony Harper, entitled "Relief From Judgment or Order Under Rule 60(b)" is **DENIED**; and

2. A certificate of appealability shall not issue because petitioner has not made a credible showing that this Court's procedural ruling was incorrect or a substantial showing of a deprivation of constitutional rights.

with this Rule, the Court did not order respondents, Donald T. Vaughn, Attorney General of the Commonwealth of Pennsylvania, and District Attorney of Philadelphia County, to respond to petitioner's *pro se* submission.